UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

JOSEPH S. GONCALVES, JR.,   )
            )
   Petitioner,    )
            )   Civil No. 0:21-44-GFVT-CJS
v.           )
            )
JAMES DAVID GREEN, WARDEN,  )   **REPORT AND RECOMMENDATION**
            )
   Respondent.   )

\*\*\* \*\*\* \*\*\* \*\*\*

Petitioner Joseph Goncalves, Jr., *pro se,* has filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. (R. 1). Respondent filed an Answer to Petition for Writ of Habeas Corpus (R. 18), to which Goncalves filed a Reply (R. 23). Having all relevant documents before the Court, the matter is now ripe for consideration and preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the reasons set forth below, it will be recommended that Goncalves's § 2254 Petition be denied.

## I. PROCEDURAL AND FACTUAL BACKGROUND

### A. Background

#### 1. State Court Conviction

In a habeas corpus proceeding initiated by an individual "in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also Hill v. Shoop*, 11 F.4th 373, 384 (6th Cir. 2021) (en banc). The Supreme Court of Kentucky set forth the following facts on direct appeal:

> On February 4, 2008, the Boston Beverage Depot in Nelson County, Kentucky, was robbed by three individuals wearing ski masks. The robbers threatened store clerk Louis Hall with a gun and forced him to open the store's safe. Hall complied and was knocked to the ground while the intruders emptied the safe. Nelson County Sheriff Office's Detective Ed Mattingly was assigned as lead investigator to the case. When Detective Mattingly arrived at the Boston Beverage Depot on the morning of the robbery, he interviewed Hall and manager Todd Buster. Buster

arranged for Bardstown Alarm technician Mike Van Dyke to transfer the store's surveillance camera footage from the computer hard-drive to a CD. Mattingly, Buster, and Van Dyke viewed the footage and observed three individuals enter the store and leave with approximately $3,000 in cash from the store's safe.

The following day in neighboring Hardin County, law enforcement officers assigned to the Greater Hardin County Drug Task Force ("task force") stopped a vehicle belonging to Gerald Jones of Leitchfield, Kentucky, on the suspicion that it was being used to transport individuals to purchase items to manufacture methamphetamine. Present in the vehicle were Jones, Brittany Bratcher, and Travis Basham. During the course of the stop, the officers learned that there was an un-served warrant for Jones's arrest for an alleged probation violation. Jones consented to a search of the vehicle, where officers discovered bottles of liquor and other items related to the Boston Beverage robbery in the trunk of the vehicle. After he was taken into custody, Jones was advised of his rights and consented to answering questions regarding the robbery. He admitted to committing the robbery with Jenny Giguere and Joseph Goncalves of Leitchfield, Kentucky. Jones stated that Goncalves provided the weapons used in the robbery, including a .22 caliber long-barreled pistol and a second handgun. The officers contacted Detective Mattingly and relayed this information. That same day, Mattingly obtained a warrant for Goncalves's arrest.

Goncalves was arrested on February 5, 2008, at his Leitchfield apartment. While executing the arrest warrant, police officers observed a .22 caliber long-barreled pistol and a marijuana pipe in plain view on the kitchen table. They also found a second individual, David Willoughby, in the apartment with Goncalves. Willoughby told the officers that earlier that day, he and Goncalves had driven around Grayson County in search of Jones, whom Goncalves suspected of stealing drugs and guns from him. Willoughby also stated that Goncalves had armed himself with a .22 caliber pistol while he searched for Jones.

The officers provided this information to task force Detective Sergeant Todd Cave, who had been in contact with Detective Mattingly throughout the investigation. Based on that information, as well as the information that the members of the task force learned from Jones, Detective Sergeant Cave prepared and executed an affidavit for a search warrant of Goncalves's residence. Once the search warrant was signed by a Grayson District Court judge, Detective Sergeant Cave and other officers searched the apartment, where they seized a .22 caliber long-barreled pistol, a marijuana pipe, nine rounds of ammunition, a set of electronic scales, two ski masks, duct tape, binoculars, a blue duffle bag containing various knives, and other items.

Goncalves was indicted by a Nelson County grand jury, and his trial began on March 23, 2009. A mistrial was declared when the jury was unable to reach a unanimous verdict. A second trial began on July 22, 2009, and a mistrial was declared in that trial when the jury again deadlocked. His third trial began on February 8, 2010. The trial court heard testimony from Jones and Giguere, who both identified Goncalves as one of the perpetrators. Jones also testified that it was

Goncalves who provided the weapons and knocked Hall to the ground.  Willoughby testified that Jones admitted to committing the robbery with Giguere and Goncalves, and showed him items in the trunk of Jones's car which were taken from the store.  Goncalves was ultimately convicted of first-degree robbery [and of being a Persistent Felony Offender in the first degree].

*Goncalves v. Commonwealth*, 404 S.W.3d 180, 187-88 (Ky. 2013).  Due to the Persistent Felony Offender conviction, "the jury enhanced his sentence from twenty to thirty-five years imprisonment, and the trial court sentenced him accordingly."  *Id*. at 186.

### 2.    Pretrial Filings

Goncalves's multi-year journey leading to his conviction involved many state court filings of note.  Prior to his first trial, Goncalves filed a motion to suppress the evidence seized from his apartment after his arrest on the grounds that his arrest was executed prior to the judge signing off on the warrant.  *Id*. at 188.  A suppression hearing was held, and the trial court concluded "that the Grayson District Court judge had sufficient grounds under the 'totality of the circumstances' test established in *Illinois v. Gates*, 462 U.S. 213 (1983), to believe that probable cause existed for the subsequent issuance of a search warrant for Goncalves's residence" and that "a valid arrest warrant was obtained prior to Goncalves's arrest."  *Id*. at 189.  Before his third trial, Goncalves asked the trial court "to reconsider its decision on the motion to suppress in light of new evidence obtained over the course of the two earlier trials."  *Id*.  Although "[t]he trial court allowed him to provide a timeline of testimony and evidence to supplement his original motion to suppress," it did not alter its original ruling and the evidence was admitted.  *Id*.

Prior to his first trial, Goncalves filed a motion to dismiss the indictment for speedy trial violation.  (R. 1-7 at Page ID 77); *see also Commonwealth v. Goncalves*, No. 08-CR-00028, Nelson Circuit Court (hereinafter "CourtNet Docket").[1]  After a hearing, the circuit court also denied this

---

[1] The Court takes judicial notice of this case docket. *See Chase v. MaCauley*, 971 F.3d 582, 587 n.1 (6th Cir. 2020) (taking judicial notice of information from another court's website in a § 2254 case)

motion. *See* CourtNet Docket. Goncalves did not renew this argument at the trial court level, but did raise the issue on appeal. *See Goncalves*, 404 S.W.3d 180; *see also* CourtNet Docket.

Lastly, there were various motions to withdraw as counsel and requests for new counsel filed throughout the course of Goncalves's three trials. *See Goncalves*, 404 S.W.3d at 201; *see also* CourtNet Docket. Within Goncalves's first motion to relieve his public defender, he also requested to be given leave to proceed *pro se*. *See Goncalves,* 404 S.W.3d at 201. After conducting a *Faretta* hearing,[2] the trial court allowed Goncalves to proceed *pro se*, while later appointing him a public defender to serve as hybrid counsel. *Id*.; *see also Goncalves v. Commonwealth*, No. 2017-CA-001027-MR, 2018 Ky. App. Unpub. LEXIS 510, at *9 (Ky. Ct. App. July 20, 2018). In all, Goncalves was represented by four different public defenders from the Kentucky Department of Public Advocacy ("DPA") either as full or hybrid counsel. *See Goncalves,* 404 S.W.3d at 201.

### 3.    Direct Appeal

Following his conviction and the entry of final judgment on February 19, 2010, Goncalves filed a notice of direct appeal on February 23, 2010, raising thirteen issues including:

> (1) the trial court erred when it denied his suppression motion relating to evidence seized from his apartment; (2) the tendered complicity instructions violated his due process rights; (3) the Commonwealth improperly shifted the burden of proof during its closing argument; (4) the Commonwealth allowed exculpatory evidence to be destroyed in violation of *Brady v. U.S.*; (5) the trial court erred when it refused to allow him to examine the prosecutor regarding alleged prosecutorial misconduct; (6) the pretrial delay violated his rights to a speedy trial; (7) his constitutional rights to confrontation were violated when the trial court refused to allow him to play video-recorded testimony to the jury to impeach two witnesses; (8) as a *pro se* litigant, his due process rights were violated when he was granted insufficient access to legal materials; (9) his due process rights were violated when he received

---

(citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999) ("[F]ederal courts may take judicial notice of proceedings in other courts of record.")).

[2] "The purpose of *Faretta* procedures, also known as a *Faretta* hearing, is to confirm that a defendant's decision to proceed *pro se* involves a knowing and intelligent waiver of the federal constitutional right to counsel." *Swan v. Smith*, No. 3:12CV-00826-DJH, 2015 U.S. Dist. LEXIS 166828, at *9 (W.D. Ky. Mar. 24, 2015) (citing *Raulerson v. Wainwright*, 469 U.S. 966, 969 (1984); *Faretta v. California*, 422 U.S. 806, 833-35 (1975)).

inadequate access to a law library; (10) the trial court erred when it denied his motion for a directed verdict based on the unreliability of the Commonwealth's witnesses; (11) his constitutional rights were violated when he failed to receive a sufficient trial record to prepare for this appeal; (12) the fifty-page limit on appellate briefs imposed by this Court violated his constitutional rights; and (13) the trial court erroneously ordered the payment of public defender fees and court costs.

*Goncalves*, 404 S.W.3d at 186-87; *see also Goncalves v. Commonwealth of Kentucky*, No. 2010-SC-0142 (hereinafter "2010-SC-0142 Docket"). The Kentucky Supreme Court found error in one of Goncalves's claims regarding the imposition of public defender fees and court costs, but otherwise affirmed the trial court on all other claims on February 21, 2013.[3] *Goncalves,* 404 S.W.3d at 187. Goncalves raises in his § 2254 Petition many of the same claims he raised on appeal. (*See* R. 1).

### 4.    CR 60.02 Motion and Appeal

Following the Kentucky Supreme Court's decision on appeal, in January 2014, Goncalves filed a motion pursuant to Kentucky Rule of Civil Procedure 60.02 seeking to vacate his sentence. *Goncalves v. Commonwealth*, No. 2015-CA-001895-MR, 2016 Ky. App. Unpub. LEXIS 779, at *1 (Ky. Ct. App. Nov. 18, 2016). "Goncalves argued that under CR 60.02 and CR 60.03, he is entitled to relief due to 'fraud and/or extraordinary nature which cannot be raised in other proceedings.'" *Id*. at *1. More specifically, Goncalves argued that the prosecutor acted with deliberate bad faith when he "intentionally destroyed the original video surveillance footage of the robbery," in order to prevent Goncalves from presenting exculpatory evidence at trial. *Id*. at *1-2. The trial court denied Goncalves relief on August 21, 2015, finding that Goncalves had not raised any new arguments that were not already addressed on his direct appeal, and Goncalves subsequently appealed that denial. *Id*. at *2. The Kentucky Court of Appeals reiterated that a CR 60.02 motion is not a substitute for an appeal and also reiterated the Kentucky Supreme Court's

---

[3] The Kentucky Supreme Court's decision was originally rendered on February 21, 2013, but later corrected on March 15, 2013. *See* 2010-SC-0142 Docket.

finding that "a missing evidence instruction given by the trial court cured any possible prejudice caused by the Commonwealth's failure to preserve the computer hard drive containing the original surveillance footage." *Id*. at *2-3 (citing *Goncalves*, 404 S.W.3d at 195-97). Thus, the Kentucky Court of Appeals affirmed the trial court's decision denying the CR 60.02 motion on November 18, 2016. *Id*. at *3.

### 5.     RCr 11.42 Motion and Appeal

Lastly, Goncalves filed a state post-conviction motion to vacate judgment and conviction under Kentucky Rule of Criminal Procedure ("RCr") 11.42,[4] which was denied by the trial court on May 24, 2017. *Goncalves v. Commonwealth*, No. 2017-CA-001027-MR, 2018 Ky. App. Unpub. LEXIS 510, at *3 (Ky. Ct. App. July 20, 2018). Goncalves again appealed. *Id*. Within his RCr 11.42 motion and on appeal, Goncalves argued various ineffective assistance of counsel claims, including: 1) his attorneys who were employed by the DPA had excessive workloads, and therefore, their performance was defective; 2) his attorney at his first trial erred by not addressing the alleged prosecutorial tampering with physical evidence and failing to properly investigate the case; 3) multiple attorneys who represented him as hybrid counsel performed poorly and were therefore ineffective; and 4) his attorney on direct appeal provided ineffective legal assistance. *Id*. at *4.

The Kentucky Court of Appeals first addressed a procedural issue with some of Goncalves's claims. Specifically, the court addressed whether allegations of ineffective assistance of counsel could be raised against counsel who represented Goncalves in his first two trials, which both ended in mistrials. The court reasoned that "[i]t is well-settled that a movant may only

---

[4] Kentucky Rule of Criminal Procedure 11.42 allows "[a] prisoner in custody under sentence or a defendant on probation, parole or conditional discharge who claims a right to be released…to collateral[ly] attack… [his conviction] directly by motion in the court that imposed the sentence…." RCr 11.42(1).

collaterally attack a judgment for which he or she is under some form of custody." *Id.* at *5 (citing

*Lewallen v. Commonwealth*, 584 S.W.2d 748, 749 (Ky. Ct. App. 1979)).  The court found that:

> Implicitly if a party is in custody, a party was subject to a final judgment.  As stated, "RCr 11.42 provides for relief from a final judgment, if the petitioner is in custody." Here, there were three trials but only the third trial resulted in a conviction. Accordingly, Goncalves, based on the plain meaning of RCr 11.42, may only collaterally attack the sentence for which he is [in] custody. This judgment was imposed at the third trial. The other two were mistrials and did not result in a conviction or a final judgment.

*Id.* (internal citations omitted).  Thus, the court concluded that Goncalves could only raise claims

of ineffective assistance of counsel against the counsel who represented him in the third trial.  *Id.*

In addressing Goncalves's viable ineffective assistance of counsel claims, the court concluded that

it "found no constitutional error on the part of his counsel in either the trial or the direct appeal."

*Id.* at *13.

## II.     ANALYSIS

### A.     Legal Standards

Where, as here, a § 2254 petition was filed after April 24, 1996, review is governed by the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254.  *See Lindh v.*

*Murphy*, 521 U.S. 320, 322-23 (1997).   AEDPA was enacted "to reduce delays in the execution

of state and federal criminal sentences, particularly in capital cases," and "'to further the principles

of comity, finality, and federalism[.]'"  *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting

*Williams v. Taylor*, 529 U.S. 362, 436 (2000)).  "AEDPA recognizes a foundational principle of

our federal system: State courts are adequate forums for the vindication of federal rights."  *Burt v.*

*Titlow*, 571 U.S. 12, 19 (2013).  As such, the Act "erects a formidable barrier to federal habeas

relief for prisoners whose claims have been adjudicated in state court.  *Id.*

Under AEDPA's limited review, a petitioner may only obtain habeas relief if the state

court's adjudication of his ground "was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding." § 2254(d)(1)-(2).  The "contrary to" and "unreasonable application" clauses of the first exception under § 2254(d)(1) have independent meaning.  *Williams*, 529 U.S. at 405.  First, "[a] state court's decision is contrary to clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a different result from [this] precedent."  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams*, 529 U.S. at 405-06) (cleaned up).

Second, a state court's decision involves an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Id.* at 520-21 (citations omitted).

Thus, under the AEDPA, the question for this Court is "not whether a federal court believes the state court's determination was incorrect but whether the determination was unreasonable—a substantially higher threshold."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Moreover, a petitioner carries the burden of proof, and "this is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal citations and quotation marks omitted). Furthermore, factual findings of the state court are presumed correct unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see also Forensic v. Birkett*, 501 F.3d 469, 472 (6th Cir. 2007) ("This standard requires the federal courts to give considerable deference to state court decisions."). Section 2254 relief is grounded in the rationale that federal habeas review exists to ensure that individuals are not unconstitutionally imprisoned; therefore, it is intended to cure only serious constitutional errors, not merely to correct errors of fact or re-litigate state adjudications. *See Herrera v. Collins*, 506 U.S. 390, 401 (1993) ("Federal courts are not forums in which to re-litigate state trials.") (internal quotation marks omitted). Further, the Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). The Supreme Court acknowledges that the standard for relief under § 2254 is a very high standard, observing that "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102.

The AEDPA's standard of review under 28 U.S.C. § 2254(d) applies only to grounds that were adjudicated on the merits. *See Nields v. Bradshaw*, 482 F.3d 442, 449 (6th Cir. 2007). Where the state court did not rule on the merits of a petitioner's ground, application of a *de novo* standard of review is appropriate. *Id.* at 450. In determining whether a ground was adjudicated on the merits such that AEDPA's heightened deference applies, the habeas court must look to the last

reasoned state-court opinion to determine the basis for the state court's rejection of the petitioner's federal constitutional claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc). A state court has adjudicated a claim "on the merits[,]" and the AEDPA standard applies, regardless of whether the state court provided an opinion "explaining the state court's reasoning" for its decision. *Harrington*, 562 U.S. at 98.

A federal court cannot grant habeas relief if there is still a potential state remedy for the state courts to consider. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (citing 28 U.S.C. § 2254(c), now § 2254(b)(1) from statutory renumbering). To be deemed properly exhausted, therefore, each ground must have been fairly presented to the state courts. *See id.* ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *see also Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009) ("Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim."). The exhaustion requirement "affords state courts an opportunity to consider and correct any violation of federal law, thus expressing respect for our dual judicial system while also furnishing a complete record of a petitioner's federal claim as litigated in the state system, including the state court of last resort." *Hafley v. Sowders*, 902 F.2d 480, 482 (6th Cir. 1990). When a petitioner has failed to fairly present his grounds to the state courts and no state remedy remains, his claims are procedurally defaulted and are barred from habeas review. *See Woolbright v. Crews*, 791 F.3d 629, 631 (6th Cir. 2015).

In cases in which a state prisoner has defaulted his federal grounds in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the grounds is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in

a fundamental miscarriage of justice. *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).  A four-part test is used to determine whether federal habeas review is precluded due to a petitioner's failure to observe a state procedural rule.  *See id.* (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).  Under this test, courts examine whether: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the state procedural sanction; (3) the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional ground for relief; and (4) the petitioner demonstrates that there was cause for his failure to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.*  A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim—supported by new reliable evidence not presented at trial—would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### B.    Timeliness of Goncalves's § 2254 Petition

#### 1.    Timeliness Generally

Despite Goncalves having been convicted more than eleven years before he filed the present Petition, Goncalves's Petition is arguably timely.  Pursuant to the AEDPA, a petitioner generally has only one year in which to file a federal petition for writ of habeas corpus.  *See* 28 U.S.C. § 2244(d).  The AEDPA one-year limitations period begins to run from the latest of four circumstances:

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

11

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2244(d)(1).

In this case, subsection (A) applies, with the limitations period beginning to run from the date on which Goncalves's judgment of conviction became "final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *see Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). The state trial court sentenced Goncalves on February 19, 2010, and Goncalves appealed just three days later on February 23, 2010. *See* CourtNet Docket. The Kentucky Supreme Court entered its decision affirming Goncalves's conviction and sentence on February 21, 2013.[5] *See Goncalves*, 404 S.W.3d 180; *see also* 2010-SC-0142 Docket. After the Kentucky Supreme Court's ruling, on March 21, 2013, Goncalves filed a motion for rehearing, which was denied on August 29, 2013. *See* 2010-SC-0142 Docket. Then, on October 3, 2013, Goncalves filed a petition for writ of certiorari with the United States Supreme Court, which was denied on December 2, 2013. *Id.*; *see also Goncalves v. Kentucky*, 571 U.S. 1081 (2013). Thus, absent tolling, Goncalves had one year from the date of the denial of certiorari, that is until December 2, 2014, to file a federal habeas petition. *See* 28 U.S.C. § 2244(d)(1)(A). Nonetheless, Goncalves's prolific filings seeking other state court relief have arguably tolled his one-year limitation for filing his § 2254 Petition.

## 2.    Statutory Tolling

---

[5] The appellate court corrected the opinion on March 15, 2013, replacing two pages that contained errors, stating "the purpose of this order of correction is to correct the designation of counsel which does not affect the holding of the original opinion of the court." *See* 2010-SC-0142 Docket. This correction does not affect the timeliness calculation because using either date, Goncalves filed a timely petition for writ of certiorari to the United States Supreme Court.

The one-year limit to file a federal habeas petition is, however, subject to statutory tolling. The limitation period is statutorily tolled by the filing of a state post-conviction application, pursuant to 28 U.S.C. § 2244(d)(2). The one-year period is tolled by the amount of time that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* "[A]n application is '*properly filed*' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," including "time limits upon its delivery." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Notably, however, the tolling provision does not "'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)).

On January 21, 2014, Goncalves sought post-conviction relief under Kentucky Rule of Civil Procedure ("CR") 60.02. (*See* R. 18-9 at Page ID 555); *see also* CourtNet Docket; *Goncalves*, No. 2015-CA-001895-MR at *1 (Ky. Ct. App. Nov. 18, 2016). With this filing, Goncalves's one-year limitation was paused with 49 days of his one-year federal filing period having expired, leaving him with 316 days remaining to file. The Kentucky Court of Appeals affirmed the trial court's denial of the CR 60.02 motion on November 18, 2016, and Goncalves had 30 days to file an appeal to the Kentucky Supreme Court, but no appeal was filed. *Goncalves*, No. 2015-CA-001895-MR at *1 (Ky. Ct. App. Nov. 18, 2016); *see also* RCr 12.04(3). However, Goncalves's one-year limitation remained paused because, on November 30, 2016, prior to the 30-day expiration to file his appeal, Goncalves filed a state post-conviction RCr 11.42 motion.[6] *See* CourtNet Docket. The

---

[6] Kentucky sets a three-year statute of limitations on post-conviction motions brought following a judgment. *See* RCr 11.42(10). Although petitioners are given three years after the judgment becomes final to file a motion to vacate in the Kentucky circuit court, consistent with 28 U.S.C. § 2244(d)(2), the AEDPA's one-year limitation period to file a federal habeas petition is tolled only if the state post-conviction motion is filed within the federal one-year limitation period. *See Thompson v. Chandler*, 55 F. App'x 758, 759 (6th Cir. 2003) (order rejecting a claim that the habeas limitation period was extended by the three-year period under the state law for filing a postconviction motion under RCr 11.42).

trial court denied Goncalves's RCr 11.42 motion, and the denial was affirmed by the Kentucky Court of Appeals on July 20, 2018. *See Goncalves*, No. 2017-CA-001027-MR (Ky. Ct. App. July 20, 2018). Thus, Goncalves's one-year limitation remained tolled until August 19, 2018, when Gonaclves's time to appeal to the Kentucky Supreme Court expired.

Counting from August 20, 2018 to October 30, 2018, 72 days lapsed, bringing Goncalves's total lapsed time to 121 days, leaving him with 244 days remaining to file. The one-year limitation to file was once again tolled on October 31, 2018, when Goncalves filed a state petition for writ of habeas corpus in the Morgan Circuit Court. *See* CourtNet Docket. Goncalves's habeas corpus petition remained pending in state court until August 28, 2020, when an order dismissing the petition was entered. *See id*. Goncalves filed a timely appeal, and the Kentucky Court of Appeals affirmed the decision on January 27, 2021. *Goncalves v. Commonwealth*, No. 2020-CA-0142 (Ky. Ct. App.). Goncalves did not appeal the appellate court's decision, and the time to do so expired on February 26, 2021. Then, on April 19, 2021, Goncalves signed and mailed his federal § 2254 Petition, with 193 days remaining in his one-year federal limit to file his petition and just over eleven years from the date of his sentencing.

### 3.      Respondent's Timeliness Position

Respondent argues that Goncalves's filing of his state habeas corpus petition did not toll his one-year limitation for filing a § 2254 petition in federal court, and therefore his § 2254 Petition was untimely. (*See* R. 18). Respondent states that "[t]he sole purpose of a habeas corpus proceeding is to determine whether the person detained is entitled to an *immediate* release from detention" (R. 18 at Page ID 336) (emphasis in original) (citing *Graham v. O'Dea*, 876 S.W.2d 621 (Ky. Ct. App. 1994)), and that "petitioner must show the inadequacy of other remedies (such as a direct appeal or an RCr 11.42 motion) before a petition for writ of habeas corpus will be addressed (*id*.) (citing *Commonwealth v. Marcum*, 873 S.W.2d 207, 209-10 (Ky. 1994)). Respondent asserts

that under these state habeas corpus guidelines, Goncalves's state writ for habeas corpus was denied, and thus, it was not properly filed and did not toll the federal habeas statute of limitations. (R. 18 at Page ID 336-37).  Respondent quotes the decision of the Kentucky Court of Appeals to support Respondent's argument, which stated "[t]he issues appellant raised either were or could have been and should have been raised in his direct appeal or his previous collateral attacks on his conviction.  Because Kentucky law provided petitioner with a more appropriate forum to present his grievances, habeas corpus relief is not available."  (*Id*. at Page ID 336-37).

To start, "RCr 11.42 does not restrict a petitioner's access to habeas corpus relief pursuant to KRS 419.020 or Section 16 of the Kentucky Constitution. Rather, it exists simultaneously[.]" *Commonwealth v. Carneal*, 274 S.W.3d 420, 430 (Ky. 2008), *cert. denied,* 558 U.S. 906 (2009). Thus, Goncalves was not procedurally barred from filing a writ for habeas corpus in state court just because he previously filed a motion under RCr 11.42.  And as previously discussed, the one-year period for filing a federal habeas petition is tolled by the amount of time that "a *properly filed* application for State post-conviction *or other collateral review* with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244 (emphasis added).  "[A]n application is '*properly filed*' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," including "time limits upon its delivery." *Artuz*, 531 U.S. at 8 (emphasis in original).  Furthermore, the Supreme Court has held that "the question whether an application has been 'properly filed' is quite separate from the question whether the claims *contained in the application* are meritorious and free of procedural bar."  *Id*. at 9 (emphasis in original).

The arguments raised by Respondent are almost identical to those raised and rejected in *Artuz*.  The Supreme Court in *Artuz* stated that:

> The state procedural bars at issue in this case—N.Y. Crim. Proc. Law §§ 440.10(2)(a) and (c) (McKinney 1994)—simply prescribe a rule of decision for a court confronted with claims that were "previously determined on the merits upon an appeal from the judgment" of conviction or that could have been raised on direct

appeal but were not: "[T]he court must deny" such claims for relief. Neither provision purports to set forth *a condition to filing*, as opposed to *a condition to obtaining relief*. Motions to vacate that violate these provisions will not be successful, but they have been properly delivered and accepted so long as the filing conditions have been met. Consequently, the alleged failure of respondent's application to comply with §§ 440.10(2)(a) and (c) does not render it "improperly filed" for purposes of § 2244(d)(2). The judgment of the Court of Appeals must therefore be affirmed.

*Artuz*, 531 U.S. at 10-11 (emphasis added). As in *Artuz*, merely because it was appropriate for the state appellate court to find that the post-conviction petition lacked merit, does not mean that it was improperly filed. Goncalves did not fail a condition *to filing*, rather his state court writ for habeas corpus failed a condition *to obtaining relief*. As such, Gonaclves's state court habeas filing tolled the federal statute of limitations, and his current filing is timely.

## C.    Goncalves's Grounds for Relief

### 1.    Refusal of Kentucky Court of Appeals to Review Issues From Mistrials

In his first claim for relief, Goncalves asserts that he was "denied state liberty interest to one full/fair review of [all] constitutional claims" under the Kentucky Constitution when the state appellate court refused to address issues and facts Goncalves raised regarding his first and second trials, which both ended in mistrials. (*See* R. 1-7 at Page ID 59-64) ("Court refused to review trials 1 or 2 despite mistrials over Petitioner's expressed objections to admonish hung jury(s) that defendant didn't have to prove himself not guilty as Commonwealth instructed."). In its Answer, Respondent points to the Kentucky Supreme Court's statements on this argument on appeal.[7] The

---

[7] Respondent also makes a brief argument regarding double jeopardy. Through the Court's reading of Goncalves's claim, it does not appear that he has raised a double jeopardy argument. Nonetheless, Respondent is correct that the Double Jeopardy Clause was not violated by the state court. "[W]hile the defendant has an interest in avoiding multiple trials, the Clause does not prevent the Government from seeking to reprosecute. Despite the argument's textual appeal, [the Supreme Court] has held that the second trial does not place the defendant in jeopardy 'twice.'" *Yeager v. United States*, 557 U.S. 110, 118 (2009) (citing *Richardson v. United States*, 468 U.S. 317, 323 (1984)). Rather, "a jury's inability to reach a decision is the kind of 'manifest necessity' that permits the declaration of a mistrial and the continuation of the initial jeopardy that commenced when the jury was first impaneled." *Id.* (citing *Arizona v. Washington*, 434 U.S. 497, 505-06 (1978)). Therefore, when the state court declared not one, but two mistrials due to the jury's inability to reach a verdict, the state was constitutionally permitted to hold new trials.

Kentucky Supreme Court addressed Goncalves's arguments regarding the first two trials as follows:

> Before we commence with our analysis of the issues, we must first address the manner in which the appellant has referenced the record in his brief. To support many of his claims, Goncalves frequently references testimony and evidence presented in the first and second trials. Our appellate jurisdiction is limited to final orders and judgments, and therefore we decline to address any alleged errors or events arising from non-final orders from Goncalves's first or second trial. *See* Kentucky Civil Rule ("CR") 54.01; *Wilson v. Russell*, 162 S.W.3d 911 (Ky. 2005). As stated in CR 76.12(4)(c)(v) an appellate brief must present an argument with "supportive references to the record." References to the first and second trials in this matter fail to conform to the CR 76.12 standard, and therefore we will not address those arguments. *See Beshear v. Haydon Bridge Company, Inc*., 304 S.W.3d 682 (Ky. 2010). *See also Harris v. Commonwealth*, 384 S.W.3d 117, 130 (Ky. 2012) (mistrial following hung jury is a "non-event" per *Yeager v. U.S.*, 557 U.S. 110, 129 S. Ct. 2360, 174 L. Ed. 2d 78 (2009)).

*Goncalves*, 404 S.W.3d at 188 (citations as in original).

Goncalves cites to various federal cases in passing, but none of the cases cited by Goncalves are applicable to his first claim, (*see* R. 1-7 at Page ID 59-64).[8] Nonetheless, the substance of Goncalves's claim focuses on his argument that the Kentucky Supreme Court's determination of its jurisdiction to decide certain issues on appeal was incorrect and in violation of the Kentucky Constitution. (*See* R. 1-7 at Page ID 59). To start, "a violation of state law is insufficient to serve as a basis for federal habeas relief." *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001) (citing *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000)).

Furthermore, "[f]ederal habeas courts reviewing convictions from state courts will not consider claims that a state court refused to hear based on an adequate and independent state procedural ground." *Davila v. Davis*, 582 U.S. 521, 524 (2017). "Determination of whether a

---

[8] For example, Goncalves cites *Griffin v. Illinois*, 351 U.S. 12 (1956), which considered the constitutionality of a state law that allowed the state to deny prisoners' requests for copies of their appellate record. He also cites *Lockyer v. Andrade*, 538 U.S. 63 (2003), which addressed whether a state "third strike" statute, was contrary to, or an unreasonable application of, clearly established federal law under 28 U.S.C. § 2254(d)(1).

state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary," and appealability is a state jurisdictional issue. *Carter v. Wardlow*, No. 24-5148, 2024 U.S. App. LEXIS 21408, at *10 (6th Cir. Aug. 22, 2024) (quoting *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976) (per curiam)). In Kentucky state court, "[j]urisdiction is the ubiquitous procedural threshold through which all cases and controversies must pass prior to having their substance examined," and the Kentucky Rules of Civil Procedure "require that there be a final order or judgment from which an appeal is taken." *Wilson v. Russell*, 162 S.W.3d 911, 913 (Ky. 2005); *see also Commonwealth v. Farmer*, 423 S.W.3d 690, 692 (Ky. 2014) (quoting *Wilson*, 162 S.W.3d at 913) ("It is fundamental that a court must have jurisdiction before it has authority to decide a case.").

Whether or not a state appellate court has authority to review certain claims on direct appeal is a question of jurisdiction. The Kentucky Supreme Court determined that it did not have jurisdiction to hear Goncalves's claims regarding his first and second trials because they did not result in final appealable judgments or orders. This federal court is unable to review the Kentucky Supreme Court's application of state procedural law or its determination regarding jurisdiction. Therefore, Goncalves's first claim fails.

### 2. Constructive Denial of Counsel

Next, Goncalves argues that he was constructively denied counsel due to the caseload of DPA counsel and due to counsel having a conflict of interest. Although Goncalves sets this claim out as separate and apart from his other ineffective assistance of counsel claims, it is an ineffective assistance claim nonetheless and will be discussed with Goncalves's other ineffective assistance of counsel claims below. (*See infra* Section II.C.11).

### 3. Unreasonable Search and Seizure

In his third ground for relief, Goncalves asserts that the trial court erred when it did not suppress the evidence seized from his apartment after he was arrested. (*See* R. 1-7 at Page ID 75-76). Goncalves's claim centers around his argument that the officers did not have a valid warrant when he was arrested. (*Id.*). During the arrest, officers saw incriminating items in plain view, and they used these observations to obtain a search warrant of Goncalves's apartment. *See Goncalves*, 404 S.W.3d at 188. Goncalves asserts that the arrest warrant was signed shortly *after* he was arrested, thus the officers unlawfully entered his apartment and the subsequent search warrant, which was based on information they obtained when they unlawfully entered his apartment to arrest him, was in turn also unlawful. (*Id.*). Therefore, Goncalves argues, any evidence obtained through the execution of the search warrant should be suppressed. (*Id.*).

A writ of habeas corpus cannot be granted on an allegation of a Fourth Amendment violation when the petitioner had a full and fair opportunity to present the claim in state court. *Stone v. Powell*, 428 U.S. 465, 494 (1976); *Richardson v. Palmer*, 941 F.3d 838, 855 (6th Cir. 2019); *see also Moore v. Hildebrand*, No. 24-3076, 2024 U.S. App. LEXIS 12915, at *5 (6th Cir. May 29, 2024) (finding that where petitioner was "given a full and fair opportunity to litigate his Fourth Amendment claim in the state courts," he is barred from federal habeas review in his § 2554 claim pursuant to *Stone*). The Sixth Circuit has clarified that the only question the Court need ask when a Fourth Amendment claim is raised in a federal habeas petition is: "Did the state courts permit the defendant to raise the claim or not?" *Good v. Berghuis*, 729 F.3d 636, 640 (6th Cir. 2013). "In the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Id.* at 639.

Goncalves's Fourth Amendment claim is not cognizable on federal habeas view because he had a full and fair opportunity to present the claim in state court. *Stone*, 428 U.S. at 494. As

discussed above, Goncalves filed a motion to suppress prior to his first trial, the state trial court held a suppression hearing, and the motion was denied. *See Goncalves*, 404 S.W.3d at 188-89; *see also* CourtNet Docket. Then, prior to the third trial, Goncalves requested that the trial court reconsider its decision on his motion to suppress in light of new evidence Goncalves obtained over the course of his first two trials, and the trial court granted his request. *Goncalves,* 404 S.W.3d at 189. After reconsidering the motion to suppress in light of the new evidence, the trial court determined that it should still be denied. *Id*. On appeal, Goncalves argued that the trial court improperly denied his suppression motion, but the appellate court rejected this argument, finding that the trial court did not err in denying Goncalves's motion to suppress the evidence seized from his apartment. *Id*. The state court's treatment of Goncalves's suppression motion precludes a review of the claim through a § 2254 petition. *See Good,* 729 F.3d at 640 ("Good could, indeed did, present his suppression motion to the state trial court, and the trial court rejected it. He presented it again to the state appellate court, and the appellate court rejected it once more. That suffices to preclude review of the claim through a habeas corpus petition under *Stone v. Powell*."); *Gaston v. Eppinger*, No. 1:19-CV-02462-SL, 2022 U.S. Dist. LEXIS 237629 (N.D. Ohio Nov. 18, 2022), *adopted in part and rejected in part by Gaston v. Fender*, No. 1:19-cv-2462, 2023 U.S. Dist. LEXIS 19790, at *39 (N.D. Ohio Feb. 6, 2023) (rejecting only the magistrate judge's recommendation that a certificate of appealability be denied) (finding petitioner's Fourth Amendment claim non-cognizable "regardless of the fact that Gaston…couches the alleged violation of his Fourth Amendment rights in terms of a due process violation").

### 4.    Denial of a Speedy Trial

In this fourth ground for relief, Goncalves argues that he was denied his Sixth Amendment right to a speedy trial. (R. 1-7 at Page ID 77-82). Respondent argues that the Kentucky Supreme Court analyzed this argument on appeal by applying the factors set forth in *Barker v. Wingo*, 407

U.S. 514 (1972), and correctly determined that Goncalves did not suffer a speedy trial violation. (R. 18 at Page ID 347).

A defendant has "the right to a speedy and public trial" under the Sixth Amendment, which right applies to the states through the Fourteenth Amendment. *Brown v. Romanowski*, 845 F.3d 703, 712 (6th Cir. 2017) (quoting U.S. Const. amend. VI). Courts consider four factors from *Barker v. Wingo* to determine whether a defendant's speedy-trial rights were denied: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant." *Id.* (citing *Barker,* 407 U.S. at 530). Because AEDPA deference applies to a state appellate court's speedy trial analysis on federal habeas review, a court:

> need not go into too great of depth in considering [the *Barker*] factors, but instead should simply ascertain whether the state court's decision constituted an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). A decision can "unreasonably apply" federal law if "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case," or if "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. at 407. This court is not concerned with whether the state court ruled erroneously or incorrectly, but rather with whether the state court decision was "objectively unreasonable." *See Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004); *Cyars v. Hofbauer*, 383 F.3d 485, 493 (6th Cir. 2004); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004).

*Brown v. Bobby*, 656 F.3d 325, 332-33 (6th Cir. 2011). In light of this standard, this Court now reviews the Kentucky Supreme Court's analysis of these factors in denying the merits of this claim below under AEDPA deference.

The first factor—the length of the delay—is the so-called "triggering mechanism," although it also serves "as a measure of the severity of the prejudice suffered by an accused." *Rice v. Warden, Warren Corr. Inst.*, 786 F. App'x 32, 34 (6th Cir. 2019), *cert. denied sub nom. Rice v. Jackson-Mitchell*, 140 S. Ct. 819 (2020)). The "triggering mechanism" is the threshold requirement, meaning "the delay must be lengthy enough to trigger a constitutional analysis at all."

21

*Id.* Generally, delays over a year satisfy this factor, triggering an analysis of the remaining *Barker* factors. *Id.* at 34-35.

In this case, the Kentucky Supreme Court started its timeliness analysis by addressing all three of Goncalves's trials, stating, "[m]ore recently, however, this Court, in unpublished opinions, has measured the pertinent period of delay from the time of arrest to the time of the final trial, treating mistrials as reasons for delay to be considered in the speedy trial calculus." *Goncalves*, 404 S.W.3d at 199. The court concluded that this "approach is appropriate because the four-factor *Barker* analysis allows for full and proper consideration of intervening mistrials under the second factor, the reasons for delay." *Id.* In consideration of all three trials, the Kentucky Supreme Court held "that the two-year period between the arrest and third trial is presumptively prejudicial[.]" *Id.* at 199-200.

The second factor—the reason for the delay—did not weigh in Goncalves's favor because "a majority of the pretrial delays were caused by Goncalves, and those caused by the Commonwealth were for valid reasons." *Id.* at 200. The Kentucky Supreme Court found that "[u]pon [its] own review of the trial court's record, [it had] gleaned that delays arose, generally, from Goncalves's own motions and pretrial demands, the March 2009 suppression hearing, problems related to Goncalves's legal representation, and…from the necessity of completing three full trials before a verdict could be reached." *Id.* To the Kentucky Supreme Court's first point, Goncalves filed more than sixty pretrial motions, sixteen of which were filed between the second and third trials. *Id.* The second source of delay, the suppression hearing, did not weigh for or against Goncalves, although the Kentucky Supreme Court notes that delays in the suppression motion were at the agreement of both Goncalves and the Commonwealth. *Id.* Third, the Kentucky Supreme Court found notable delay "can be attributed to a variety of issues related to Goncalves's representation," including a *Faretta* hearing and addressing complaints raised regarding

Goncalves's four different appointed counsel (including his hybrid counsel after he was given leave to proceed *pro se*). *Id*. at 201. Although the Kentucky Supreme Court did not count these delays against Goncalves, it also noted that the delays were not attributable to the Commonwealth. *Id*. Finally, the Kentucky Supreme Court rejected Goncalves's assertion that significant delay was caused by investigating detective Ed Mattingly's absences, noting that Goncalves did not identify when these absences occurred and finding that delays caused by a missing witness are a "neutral reason for delay that will not weigh against the government," and that Detective Mattingly's absences specifically were justified and not meant to cause deliberate delay. *Id*.

The third factor—Goncalves's assertion of his right—weighed in his favor. The Kentucky Supreme Court noted that Goncalves asserted his right to a speedy trial in writing on June 26, 2008, and continued to assert his right both verbally and in writing on various occasions. *Id*. at 202.

The fourth factor—prejudice to Goncalves—necessitates consideration of three interests: "(1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern, and (3) to minimize damage to the defense." *Brown*, 845 F.3d at 716 (citing *Barker*, 407 U.S. at 532). The third interest is the "the most serious, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. (internal quotation marks omitted) (citing *Barker*, 407 U.S. at 532).

Regarding the first interest, the Kentucky Supreme Court conceded that two years is a long period of incarceration, but found the period of time is less egregious when considering that Goncalves received three trials during that two-year period. *Goncalves*, 404 S.W.3d at 202. The court found that the delay within this context was not enough to, on its own, show actual prejudice. *Id*. Next, the Kentucky Supreme Court found that although Goncalves claimed that he experienced anxiety, he specifically stated that the anxiety was "from *lack of effective representation,*

*investigation, transcripts and legal access*," and not due to the delay in bringing his case to trial. *Id*. (emphasis in original). Ultimately, the Kentucky Supreme Court found that the third interest failed because Goncalves's claim that the time delay caused evidence to be destroyed was "simply tied to his conspiracy theory that the Commonwealth and its agents intentionally destroyed evidence," and the court had "already found that claim to be without merit." *Id*.

In summary, after considering all of the *Barker* factors, the Kentucky Supreme Court determined that no speedy-trial violation occurred:

> The two-year period from Goncalves's arrest to the third trial was presumptively prejudicial, and having asserted his right to a speedy trial early on in the proceedings, Goncalves was clearly concerned about bringing his case to trial. However, a great number of delays, indeed most, were of Goncalves's own creation (e.g., sixty-seven pretrial motions and conflicts with four different attorneys), and the Commonwealth did not attempt to deliberately delay the trial, but instead brought the case to a jury trial three times in two years. Further, Goncalves was not prejudiced by the delay. Balancing all four *Barker* factors, we conclude that Goncalves was not denied his right to a speedy trial.

*Id*. at 202-03.

On habeas review, Goncalves argues that the Kentucky Supreme Court erroneously concluded that some of the trial delays were attributable to him but makes no argument as to how the Kentucky Supreme Court's decision was contrary to or involved an unreasonable application of Supreme Court precedent; nor has he shown that the decision was based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)-(2). His claim accordingly fails. *Rice*, 786 F. App'x at 38 ("And because Rice has not cited any Supreme Court precedent recognizing a Sixth Amendment speedy-trial violation on facts remotely similar to those in this case, we cannot conclude that the Ohio appellate court unreasonably applied Supreme Court precedent in weighing those factors."). Moreover, the Kentucky Supreme Court's ruling is not "objectively unreasonable" and is in accord with other cases finding no speedy-trial violation with comparable delays. *See United States v. Jackson*, 473

F.3d 660, 668 (6th Cir. 2007) ("Because . . . a twenty-month delay is [not] extraordinary under our precedents, and given the lack of evidence of actual prejudice to Jackson or bad faith on the part of the government, the district court reasonably concluded that Jackson has not established a speedy-trial violation warranting dismissal."); *Brown*, 845 F.3d at 719 (affirming district court's decision on habeas review that twenty-five month delay did not amount to speedy-trial violation).

### 5.    The Prosecution Destroyed or Failed to Preserve Evidence

Goncalves next contends that his due process rights were violated when the Commonwealth allegedly erased parts of the security video evidence of the robbery in violation of *Brady v. United States*, 397 U.S. 742 (1970), and that this violation was not cured by the missing evidence instruction given to the jury.  (*See* R. 1-7 at Page ID 83-88).  The Kentucky Supreme Court described the basis and background for this claim as follows:

> Throughout the proceedings, Goncalves strenuously challenged the integrity of the Boston Beverage Depot surveillance camera footage, claiming it was altered by agents of the Commonwealth.  He further alleged that the Commonwealth violated his rights to due process when it failed to preserve the Boston Beverage Depot's hard drive.  Based on these allegations, Goncalves made a motion to dismiss the indictment with prejudice based on prosecutorial misconduct.  The trial court held an evidentiary hearing where video technician Mike Van Dyke testified.  At the conclusion of the hearing, the court denied the motion to dismiss and the surveillance footage was admitted into evidence over Goncalves's frequent objections.  Ultimately, the trial court gave a "missing evidence" jury instruction regarding the surveillance video.

*Goncalves*, 404 S.W.3d at 195-96.  The Kentucky Supreme Court rejected Goncalves's claim on appeal, concluding that it "need not address an alleged *Brady* violation here, as the defendant failed to prove that the Commonwealth acted in bad faith as required by *Arizona v. Youngblood*, 488 U.S. 51 (1988)."  *Id*. at 196.

Goncalves's *Brady* violation claim arose from the presence of time-gaps in the liquor store surveillance footage, which was explained by the trial testimony of Van Dyke, the video technician

employed by Boston Beverage Depot's alarm and security provider.  *Id*.  The Kentucky Supreme

Court summarized Van Dyke's testimony:

> Van Dyke testified about the procedure he used to copy the surveillance footage
> from the liquor store's hard drive, explaining that he copied clips from a specified
> length of time even if the motion-detecting cameras did not record images during
> that time frame.  As a result, "time gaps" in the timestamp would occur.  Van Dyke
> explained that the existence of "gaps" did not mean that existing footage had been
> removed, but rather that the motion-detecting cameras did not record *any* images
> during those times.  In his brief, Goncalves argues that Van Dyke said there was a
> "fifty-fifty chance" that the video was "edited."  However, Van Dyke stated that he
> was instructed by Detective Mattingly to copy any portions of the footage relevant
> to the robbery.  He further testified that he did not intentionally edit the footage,
> nor was he directed to do so by the Commonwealth or by Detective Mattingly.  In
> fact, Van Dyke explained that a clear shot of the robbers entering the liquor store,
> the absence of which Goncalves claimed was indicative of tampering, may have
> been inadvertently omitted during the process of copying the footage, or may never
> have been recorded by the computer in the first place.

*Id*.  The Kentucky Supreme Court concluded that despite Goncalves's assertion that the time gaps

were caused by actions of the Commonwealth, he failed to offer any proof "beyond speculation"

that the Commonwealth or its agents acted in bad faith.  *Id*.

Regarding Goncalves's related argument that the Commonwealth failed to preserve the

liquor store's hard drive, which contained the original video surveillance, the Kentucky Supreme

Court found:

> As for the Commonwealth's failure to collect and preserve the Boston Beverage
> Depot's hard drive as evidence, any alleged prejudice was cured by the trial court's
> "missing evidence" instruction.  *Collins v. Commonwealth*, 951 S.W.2d 569 (Ky.
> 1997) (a "missing evidence" instruction provided the defendant with "more than
> the process due" where the Commonwealth had merely failed to collect the
> evidence and any exculpatory value of the evidence was not apparent at the time it
> was not collected).  *See also Estep v. Commonwealth*, 64 S.W.3d 805 (Ky. 2002).
> Goncalves claims that the jury "clearly disregarded" the trial court's "missing
> evidence instruction" because they found him guilty.  However, "it is presumed that
> the jury will follow instructions issued to it by the trial court."  *Morgan v. Scott*,
> 291 S.W.3d 622 (Ky. 2009) (citing *Johnson v. Commonwealth*, 105 S.W.3d 430,
> 436 (Ky. 2003); *United States v. Davis*, 306 F.3d 398, 416 (6th Cir. 2002)).
> Goncalves argues that the surveillance video's "missing footage" would have
> "presumptively . . . exonerated" him, yet he offers no proof on appeal to rebut the
> presumption that the jury followed the trial court's "missing evidence" instruction.

*Id.* at 196-97.

In his federal Petition, Goncalves re-argues the reasons why he believes the appellate court should have found that his due process rights were violated but does not argue that the Kentucky Supreme Court's conclusion was a contrary or unreasonable application of the applicable Supreme Court precedent established in *Youngblood*.  (*See* R. 1-7 at Page ID 83-88).  Respondent points to this flaw in Goncalves's Petition, while also arguing that "it is not enough that a federal habeas court concludes that the state court 'applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable,'" and that Goncalves has not shown that the Kentucky Supreme Court's application of federal law was unreasonable.[9]  (R. 18 at Page ID 350).

"Separate tests are applied to determine whether the government's failure to preserve evidence rises to the level of a due process violation in cases where material exculpatory evidence is not accessible, *see* [*California v. Trombetta*, 467 U.S. 479, 489 (1984)], versus cases where 'potentially useful' evidence is not accessible [*see Youngblood*, 488 U.S. at 58]." *United States v.*

---

[9] Goncalves categorizes this ground as a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), however, that case applies to cases where the prosecution *suppresses* material evidence that is *favorable* to the defense, not to cases where the prosecution is accused of destroying or failing to preserve *potentially* exculpatory evidence.  *Wilson v. Sheldon*, 874 F.3d 470, 478 (6th Cir. 2017); *see also Damrell v. Green*, No. 16-161-KKC-CJS, 2019 U.S. Dist. LEXIS 225305, at *14 (E.D. Ky. July 26, 2019), *report and recommendation adopted by Damrell v. Green*, No. 6:16-CV-161-KKC, 2020 U.S. Dist. LEXIS 8525 (E.D. Ky. Jan. 17, 2020) (finding the Kentucky Supreme Court's rejection of petitioner's evidence destruction claim was reasonable where there was no showing of bad faith and no indication that the evidence was exculpatory).  In its opinion the Kentucky Supreme Court also uses the term "*Brady* violation" generally, stating that "no *Brady* violation occurred."  *Goncalves*, 404 S.W.3d at 196.  As discussed by the United States Supreme Court, the term "*Brady* violation" is often used imprecisely:

> [T]he term "*Brady* violation" is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence—that is, to any suppression of so-called "*Brady* material"—although, strictly speaking, there is never a real "*Brady* violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.

*See Strickler v. Greene*, 527 U.S. 263, 281 (1999) (internal footnote omitted).

27

*Wright*, 260 F.3d 568, 570 (6th Cir. 2001). Because the government does not have an "absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution," for the failure to preserve potentially useful evidence to constitute a denial of due process, a criminal defendant must show bad faith on the part of the government. *Youngblood*, 488 U.S. at 58; *see also Wright*, 260 F.3d at 571. Whether or not the government has acted in bad faith "must necessarily turn on the [government actor's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood,* 488 U.S. at 56 n.*. Bad faith requires an "official animus" or a "conscious effort" to suppress exculpatory evidence, thus negligence or even gross negligence is insufficient. *Wilson*, 874 F.3d at 479 (citing *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996)).

Accordingly, Goncalves must show that state officials acted in bad faith by failing to preserve the evidence on the surveillance video and that they knew its exculpatory value before the destruction. *Wilson*, 874 F.3d at 479. As the Kentucky Supreme Court noted, Goncalves failed to meet this standard because he did not establish, or even offer any evidence beyond speculation, that any state actor acted in bad faith by incorrectly copying the video from the hard drive or by failing to preserve the hard drive itself. Thus, the Kentucky Supreme Court's decision was not "contrary to, or [did not] involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor was it "based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding." § 2254(d)(1)-(2).

Finally, Goncalves argues that "[n]o missing evidence instruction, especially one that says the jury doesn't have to believe any missing footage would be favorable to defendant and adverse to prosecution…could ever cure these egregious [constitutional] errors." (R. 1-7 at Page ID 88). However, where the missing evidence itself is not a due process violation, "the jury instruction

28

concerning that evidence, *ipso facto*, was not a due process violation either." *Johnson v. Beckstrom*, Civil Action No. 08-194-ART, 2011 U.S. Dist. LEXIS 51274, at *39-40 (E.D. Ky. May 12, 2011); *see also United States v. Boxley*, 373 F.3d 759, 762-63 (6th Cir. 2004) (trial court's refusal to give missing-evidence instruction was not error where defendant failed to prove that police officers acted in bad faith in failing to preserve evidence); *Collins v. Commonwealth*, 951 S.W.2d 569, 573 (Ky. 1997) (where police had not destroyed evidence in bad faith, giving missing evidence instruction provided defendant "more than the process due"). The Kentucky Supreme Court's rejection of Goncalves's due process claim relating to the missing evidence instruction was reasonable and Goncalves's claim is without merit.

### 6.    Denial of Right to Confront Witnesses

Goncalves next argues that his Sixth Amendment right to confront witnesses was denied. (*See* R. 1-7 at Page ID 89-94). Goncalves asserts that he was denied this right when the trial court would not allow him to impeach witnesses by playing video of their previous testimonies from the first and second trials and was "forc[ed]…to use pro se notes instead of the transcript 'video.'" (*Id.* at Page ID 89) (cleaned up). In turn, Respondent argues that the Kentucky Supreme Court "issued an opinion well within the bounds of a reasonable application of federal law" when it found that Goncalves's claim was without merit and that Goncalves "does not identify any federal constitutional law that the Supreme Court unreasonably applied." (R. 18 at Page ID 351-52).

The Kentucky Supreme Court found as follows:

The defendant's right to cross-examine a witness is not without limits. This Court has recognized that there is no constitutional guarantee to engage in cross-examination in whatever manner and extent that the defense so desires. *Davenport v. Commonwealth*, 177 S.W.3d 763, 768 (Ky. 2005). Trial courts retain "wide latitude" in imposing "reasonable limitations" on cross-examinations, and act well within their purview in limiting examinations that are harassing, confusing, repetitive, or only marginally relevant. *Star v. Commonwealth*, 313 S.W.3d 30 (Ky. 2010). Therefore, "so long as a reasonably complete picture of the witness's veracity, bias and motivation is developed, the judge enjoys power and discretion

to set appropriate boundaries." *Davenport*, 177 S.W.3d at 768 (quoting *Commonwealth v. Maddox*, 955 S.W.2d 718 (Ky. 1997)).

Goncalves does not claim that the trial court's prohibition in some way excluded evidence, but rather that he was unable to conduct his cross-examination in the manner in which he desired. This is not, in our view, an unconstitutional limitation on cross-examination. Goncalves was permitted to use previous testimony to impeach the witnesses by using a transcript of the video-recorded testimony. The Commonwealth never contested the veracity of that transcript. In fact, neither Buster nor Willoughby denied making the statements after they were read in court. Therefore, a "complete picture" of the witnesses' veracity was adequately developed by Goncalves's examination.

As stated by the Supreme Court in *Van Arsdall*, a defendant may claim a constitutional violation of his or her right to confrontation where "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had respondent's counsel been permitted to pursue his proposed line of cross-examination." 475 U.S. at 680. We cannot say that a video-recorded testimony with content identical to that contained in an uncontested transcript would significantly impact the jury's impression of the witness's credibility. Here, the trial court's refusal to allow Goncalves to replay video-recorded testimony when a transcript of that testimony was available constituted a reasonable limitation on cross-examination, and was not an abuse of discretion.

*Goncalves*, 404 S.W.3d at 203-04.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This right applies to both state and federal criminal proceedings. *Pointer v. Texas*, 380 U.S. 400, 407 (1965). The Supreme Court has determined that the Confrontation Clause prohibits admission of testimonial, out-of-court statements made by witnesses offered to prove the truth of the matter asserted, unless the witness is unavailable and the defendant has previously had the opportunity to cross-examine the witness. [10]  *Crawford v. Washington*, 541 U.S. 36, 59 (2004). Furthermore, the

---

[10] Although the Supreme Court has not defined "testimonial," the Sixth Circuit has broadly defined the term to include "any statement made in circumstances in which a reasonable person would realize that it likely would be used in investigation or prosecution of a crime." *United States v. Cromer*, 389 F.3d 662, 673 (6th Cir. 2004) (internal quotation marks and citation omitted); *see also Hinton v. Napel*, No. 2:15-CV-10687, 2018 U.S. Dist. LEXIS 50269, at *18 (E.D. Mich. Mar. 27, 2018) (citing *Crawford*, 541 U.S. at 54) ("Testimonial statements include preliminary hearing testimony, grand jury testimony, prior trial testimony, and statements made during police interrogations."). When a statement is nontestimonial, its admissibility

right to confront a witness "means more than being allowed to confront the witness physically," *Davis v. Alaska*, 415 U.S. 308, 315 (1974), rather "[t]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*." *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (quoting *Davis*, 415 U.S. at 315-16) (emphasis in original). However,

> [i]t does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."

*Id*. at 679 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original)); *see also Vasquez v. Jones*, 496 F.3d 564, 571 (6th Cir. 2007) ("Though the particular facts of *Davis* and *Van Arsdall* implicated only bias, the holdings of those cases clearly apply to both bias and credibility.") (internal footnotes omitted). "Where the trial court limits the extent of cross-examination, the inquiry for the reviewing court is 'whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory.'" *Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2006) (quoting *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989)).

Lastly, Confrontation Clause errors are subject to harmless-error analysis. *See, e.g.*, *Bullcoming v. New Mexico*, 564 U.S. 647, 668 n.11 (2011); *Van Arsdall*, 475 U.S. at 684; *Chapman v. California*, 386 U.S. 18, 21-22 (1967). In the context of federal habeas review, "[a]n error is harmless if it did not have a 'substantial and injurious effect or influence in determining the jury's

---

is determined only by application of evidentiary rules. *See Davis*, 547 U.S. at 821; *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009).

verdict.'"  *Mayberry v. Horton*, No. 21-2836, 2022 U.S. App. LEXIS 8162, at *8 (6th Cir. Mar. 28, 2022) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)); *see Taylor v. Jordan*, 10 F.4th 625, 637 (6th Cir. 2021) (en banc).  If "the record is so evenly balanced that a conscientious judge is in grave doubt" as to whether the "substantial and injurious effect" standard is met, a habeas court may grant relief.  *Taylor*, 10 F.4th at 637 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 437 (1995)).  "But even the 'grave doubt' standard requires much more than a reasonable possibility that the result of the hearing would have been different."  *Id.* (quoting *Davis v. Ayala*, 576 U.S. 257, 276 (2015)) (internal quotation marks omitted).  Thus, even if the federal court determined that a habeas petitioner's right was violated, that determination alone does not establish per se entitlement to habeas relief, a petitioner must also show that the violation had a substantial and injurious effect on the outcome of his trial.

Goncalves cites to *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), to support his argument that his right to cross-examine the Commonwealth's witnesses was violated.  (*See* R. 1-7 at Page ID 89).  Goncalves specifically cites a dissenting opinion in *Ritchie*, which addressed the state court's denial of access to the victim's child protective services files that the defendant wished to use for purposes of cross-examination.  *See Ritchie*, 480 U.S. 39 (Brennan, J., dissenting).  These facts are unrelated to Goncalves's present claim regarding video transcripts and, moreover, a dissenting opinion is not binding and is not considered "clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

The Kentucky Supreme Court properly applied the applicable federal law as outlined in *Van Arsdall* to find that the trial court may properly limit cross examination and that the jury did not receive a different impression of the witnesses' credibility merely because Goncalves read the prior testimony instead of playing it on video.  This was a reasonable limitation on Goncalves's cross examination.  Goncalves asserts that the jury was excluded from viewing the facial

expressions of the witnesses in the video recordings. (*See* R. 1-7 at Page ID 91). However, as noted above, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Van Arsdall*, 475 U.S. at 679 (internal quotation marks omitted) (emphasis in original). Although Goncalves may have preferred to use video transcript instead of written transcripts, a denial of this preference does not amount to a constitutional violation. Being unable to show the facial expressions of witnesses in prior testimony, something rarely afforded to any defendant, is not an unreasonable limitation and does not rise to the level of a violation of Goncalves's Sixth Amendment right to confront witnesses.

Lastly, the Kentucky Supreme Court determined that "[e]ven if [it] were convinced that the trial court's refusal to allow Goncalves's use of the video was error, such error would be harmless under our case law." *Goncalves*, 404 S.W.3d at 204 n.16. And Goncalves has not argued that the lack of video recordings caused a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (internal quotation marks omitted). In fact, Goncalves points out that he was able to play the video recordings in his first two trials, neither of which resulted in his acquittal. (*See* R. 1-7 at Page ID 89). And Goncalves was able to conduct the same line of questioning to attack the Commonwealth's witnesses' credibility at each trial regardless of the differing format. In sum, the Kentucky Supreme Court's decision was not "contrary to, or [did not] involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor was it "based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

**7.    Denial of Access to Legal Materials and Court Record**

In his seventh ground, Goncalves argues that he was denied access to the court record and denied access to legal research materials. (R. 1-7 at Page ID 95-99). Regarding Goncalves's claim that he was denied access to the court record, Respondent argues that the Kentucky Supreme Court accurately found that Goncalves was not denied access to the record and that "[t]he decision of the Supreme Court of Kentucky was not an unreasonable application of federal law." (R. 18 at Page ID 352).

On this same claim raised on direct appeal, the Kentucky Supreme Court found as follows:

Goncalves claims that his due process rights were violated when he was allegedly denied pretrial access to the trial record. Specifically, Goncalves argues that he had a constitutional right as a *pro se* litigant to access trial transcripts, a DVD player, equipment to convert CDs to DVDs, as well as greater access to the Hardin County Detention Center's law library computer. Goncalves is correct that he had a due process right to access trial transcripts. *Britt v. North Carolina*, 404 U.S. 226 (1971). However, we find no such violation here, as Goncalves *was* provided a trial record. In his brief, Goncalves admits that he had access to CD records initially, and was later given DVD records by the court. After the second mistrial, Goncalves was permitted access to the jail's law library five days per week for four hours per day, where he had access to a DVD player.

Citing *Greene v. Brigano*, 123 F.3d 917 (6th Cir. 1997), Goncalves claims that he was denied the "basic tools" of advocacy when the trial court refused to grant him access to "DVDs or CDs and sufficient hours to review them on an appropriate player." This argument is without merit. Goncalves was provided access to both DVDs and CDs, appropriate viewing devices, and sufficient time to review these records. Goncalves has failed to demonstrate prejudice resulting from his access to the video trial record. *See Wheeler v. Commonwealth*, 121 S.W.3d 173 (Ky. 2003) (the use of a video record did not deny a party due process of the law although no additional type-written record was provided). Having access to the trial record and appropriate viewing devices, Goncalves did not suffer a violation of [his] due process rights.

*Goncalves*, 404 S.W.3d at 205 (internal footnotes omitted) (emphasis in original).

In his habeas Petition, Goncalves states that he "requested adequate hybrid co-counsel with the legal resources to include transcripts" and that he "had CDs but couldn't watch them." (R. 1-7 at Page ID 96-97). He further asserts that he moved the court "for proper computer access, or [to] convert CDs to DVDs." (*Id*. at Page ID 97.). As pointed out by the Kentucky Supreme Court

on appeal, Goncalves also acknowledges in his Petition that he was later given DVDs but complains that the clock on the DVD player did not work. (*Id.* at Page ID 98). Finally, Goncalves addresses the Kentucky Supreme Court's decision stating, "[i]t is not[e]worthy that the court decision fails to mention the refusal of the written transcripts being that [Kentucky] uses 'video.'" (*Id.* at Page ID 98-99).

In *Britt v. North Carolina*, the United States Supreme Court noted that it had previously determined that two factors are relevant to determine an indigent defendant's need of a free transcript: "(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript." 404 U.S. 226, 227 (1971). Regarding the first factor the Supreme Court found that:

> even in the absence of specific allegations it can ordinarily be assumed that a transcript of a prior mistrial would be valuable to the defendant in at least two ways: as a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses.

*Id.* at 228. The Supreme Court further established that "[a] defendant who claims the right to a free transcript does not, under our cases, bear the burden of proving inadequate such alternatives as may be suggested by the State or conjured up by a court in hindsight." *Id.* at 230. Applying these principles, the Supreme Court concluded that the lower court properly determined that Britt had access to an adequate alternative to a transcript. *Id.* at 228. Specifically, "the court reporter was a good friend of all the local lawyers and was reporting the second trial," and "the reporter would at any time have read back to counsel his notes of the mistrial, well in advance of the second trial, if counsel had simply made an informal request." *Id.* at 229.

In light of *Britt*, the Kentucky Supreme Court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or an unreasonable determination of the facts of Goncalves's case. Although a court may be required to provide an indigent

defendant with a free transcript of a prior proceeding when the transcript is needed for an effective defense, the court is not required to specifically provide a written or paper copy of the transcript if the defendant has access to an adequate alternative "that would fulfill the same functions as a transcript." *Id.* at 227; *compare id. with Dotson v. Morgan*, No. 01-5984, 2003 U.S. App. LEXIS 23011, at *3, *14 (6th Cir. Nov. 6, 2003) (remanded for the issuance of a conditional writ of habeas corpus where "the parties agree[d] there was no adequate alternative to a transcript available to [defendant]" because no type of transcript at all was provided.). Goncalves's access to video recordings of the previous court proceedings via DVD and his access to a DVD player within the jail constitute access to trial transcripts or, in the alternative, would constitute an adequate alternative that fulfills the same function as a traditional written transcript. In fact, as the Kentucky Supreme Court noted, Goncalves was able to transcribe his own written version of the transcript from viewing the video transcript, which he was permitted to use at the third trial to impeach witnesses. *Goncalves*, 404 S.W.3d at 203-04. Thus, the adequacy of the video transcripts is supported by the record, and the Kentucky Supreme Court's decision regarding Goncalves's access to transcripts was not contrary to federal law.

As to the issue of access to legal research materials, Goncalves asserts that, as a pretrial detainee, he had inadequate legal materials, which prevented him from being able to properly prepare for trials. (*See* R. 1-7 at Page ID 95-99). Goncalves cites *Bribiesca v. Galaza*, 215 F.3d 1015, 1020 (9th Cir. 2000) (affirming the granting of petitioner's § 2254 petition finding that "[a]n incarcerated criminal defendant who chooses to represent himself has a constitutional right to access to law books . . . or other tools to assist him in preparing a defense") (internal quotation marks omitted), and *United States v. Smith*, 907 F.2d 42, 45 (6th Cir. 1990) (affirming defendant's direct appeal of the judgment of the trial court and finding that "by knowingly and intelligently waiving his right to counsel, the appellant also relinquished his access to a law library"), to assert

that there is conflicting caselaw on the issue.  However, *Bribiesca* was overruled in part by *Kane v. Garcia Espita*, 546 U.S. 9, 10 (2005).  In citing *Kane*, Respondent argues that "the [Supreme Court of the United States] determined 'that a violation of a law library access right' cannot support federal habeas relief," therefore, "[t]he decision of the [Kentucky] Supreme Court should be left undisturbed."  (R. 18 at Page ID 353) (citing *Kane*, 546 U.S. at 10).

In *Kane,* the Supreme Court determined that "*Faretta* does not, as § 2254(d)(1) requires, 'clearly establis[h]' the law library access right. In fact, *Faretta* says nothing about any specific legal aid that the State owes a *pro se* criminal defendant." *Kane*, 546 U.S. at 10.  The Supreme Court also addressed the *Bribiesca* holding and specifically found that "[t]he *Bribiesca* court and the court below therefore erred in holding, based on *Faretta*, that a violation of a law library access right is a basis for federal habeas relief." *Id*.; *see also McCormack v. Cty. of Calhoun Inc. Form,* No. 23-1123, 2023 U.S. App. LEXIS 15147, at *4 (6th Cir. June 16, 2023) ("If a criminal defendant wishes to proceed *pro se*, he is not constitutionally entitled to access to a law library."); *McBee v. Campbell Cty. Det. Ctr.*, No. 17-5481/5943, 2018 U.S. App. LEXIS 6647, at *7 (6th Cir. Mar. 15, 2018) ("A pretrial detainee voluntarily proceeding in a criminal case *pro se* is not constitutionally entitled to access to a law library.").

Although the Kentucky Supreme Court found that Goncalves did have sufficient access to the law library, stating "it is clear from the record that Goncalves was not denied access to the law library," it also noted that such access was not a constitutional right.  *Goncalves*, 404 S.W.3d at 205 (quoting *Kane*, 546 U.S. 9).  As Respondent correctly notes, because the Supreme Court has declined to find a clearly established federal law providing a right for *pro se* defendants to access a law library and legal materials, the ground is not sufficiently raised in a § 2254 petition.  Thus, Goncalves's claim that his constitutional rights were violated due to limited access to the law library and legal materials is without merit.

### 8.    Due Process Violation Due to Improper Burden Shifting

Goncalves next argues that the Commonwealth's prosecutor shifted the burden of proof during closing arguments and that the trial court improperly denied his motion for a mistrial based on the alleged burden shifting.[11]  (*See* R. 1-7 at Page ID 100-04).  Like other grounds raised by Goncalves, Respondent argues that "he just argues that the Supreme Court of Kentucky got it wrong," but does not argue that the Supreme Court's decision was an unreasonable application of federal law.  (R. 18 at Page ID 354).

In its opinion, the Kentucky Supreme Court clarified the circumstances that occurred at Goncalves's third trial, which gave rise to his burden-shifting claim:

> During the Commonwealth's closing argument, the prosecutor began to argue: "To believe this defendant not guilty, you must disbelieve . . ." Goncalves's standby-counsel objected immediately, arguing that the prosecutor's statements were improper.  The trial court asked the Commonwealth to rephrase the argument.  The prosecutor resumed his closing argument with: "In order to believe this defendant's story, you must disbelieve all these other witnesses."  Goncalves did not object to this statement or any later portion of the Commonwealth's closing argument.

*Goncalves*, 404 S.W.3d at 194.  The Kentucky Supreme Court reviewed Goncalves's claim by applying the Kentucky rule for determining whether prosecutorial misconduct has occurred and concluded:

> After reviewing the closing argument as a whole, we find that the Commonwealth's argument did not improperly shift the burden of proof.  Throughout the trial, Goncalves argued that the co-defendants, members of law enforcement, prosecutors, and former defense counsel conspired against him to secure his conviction.  During his closing, the prosecutor called the conspiracy argument a "red herring," and offered the witnesses' testimonies as rebuttal.  The prosecutor's statement was a permissible attempt by the Commonwealth to refute Goncalves's conspiracy defense.

---

[11] In this section of Goncalves's memorandum, he also discusses the rule of law applied when a court must determine whether to order a mistrial and when making a Double Jeopardy determination.  (*See* R. 1-7 at Page ID 100-01).  Goncalves addresses this here because it appears he believes the prosecutor's statement was grounds for a mistrial.  But because the prosecutor's comments did not shift the burden of proof, and because any improper comment was cured by the trial court's handling of Goncalves's objection and by the jury instructions, Goncalves's argument regarding mistrial and Double Jeopardy will not be addressed.

*Id*. at 194-95.  The court further found that "[t]he burden of proof was sufficiently defined in the tendered presumption of innocence instruction, which required that the jury find Goncalves not guilty 'unless . . . satisfied from the evidence alone and beyond a reasonable doubt that he is guilty.'"  *Id*. at 195.

To start, "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review."  *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).   "When reviewing a prosecutorial-misconduct claim in a habeas proceeding, the relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Hammonds v. Artis*, No. 23-1939, 2024 U.S. App. LEXIS 10220, at *6-7 (6th Cir. Apr. 26, 2024) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)) (internal quotation marks and alterations omitted).  Additionally, a state "must prove every ingredient of an offense beyond a reasonable doubt," and in doing so, the prosecutor "may not shift the burden of proof to the defendant."  *Patterson v. New York*, 432 U.S. 197, 215 (1977).  The prosecutor may not "imply that the defendant is required to provide evidence to prove his or her innocence."  *Thomas v. Miniard*, No. 2:18-CV-13829-TGB, 2022 U.S. Dist. LEXIS 73202, at *23-24 (E.D. Mich. Apr. 21, 2022) (citing *Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006)).

In the present case, Goncalves's hybrid counsel immediately objected to the prosecution's statement and the trial court directed the prosecutor to rephrase his statement, which he did.  *Goncalves*, 404 S.W.3d at 194.  In addition, the Kentucky Supreme Court found that the burden of proof was sufficiently defined for the jury in the jury instructions.  *Id*. at 195.  Similarly, in *Hammonds*, the petitioner argued that the prosecutor shifted the burden of proof during closing statements when the prosecutor addressed defendant's failure to call witnesses.  *Hammonds*, 2024 U.S. App. LEXIS 10220, at *7.  When Hammonds's attorney objected, the trial court responded, "'[t]here's a jury instruction that addresses the burden of proof. We can move on.'"  *Id*. at *6.  On

habeas review, the district court concluded that the prosecutor's statements were a "fair response" to an argument made by defense counsel regarding the uncalled witnesses and that, because of the trial court's curative instruction, the alleged misconduct did not render a fundamentally unfair trial. *Id*. at *7. On appeal, the Sixth Circuit agreed with these conclusions. *Id*.

The present facts are very similar to the circumstances in *Hammonds*. As the Kentucky Supreme Court notes, throughout the trial, Goncalves argued that the Commonwealth was involved in a conspiracy with many other individuals to frame him for the robbery. *Goncalves,* 404 S.W.3d at 194-95. The prosecutor's argument that to believe Goncalves's theory of the case, the jury must disbelieve many of the witnesses' testimonies was a "fair response" to Goncalves's theory. Furthermore, as in *Hammonds*, Goncalves's counsel immediately objected to the statement, and the burden of proof was sufficiently described in the jury instructions. Unlike the court in *Hammonds*, which directed the prosecutor to move on, at Goncalves's trial, the court directed the prosecutor to rephrase his argument so as to not confuse the jury. Thus, as in *Hammonds*, the prosecution's remarks did not shift the burden of proof and did not render the trial fundamentally unfair. *See Joseph*, 469 F.3d at 474 (concluding that any prejudice from prosecutor's comment on the defendant's failure to present evidence was remedied by the trial court's instruction to disregard the remark and its subsequent instruction about the state's burden of proof); *Thomas v. Miniard*, No. 2:18-CV-13829-TGB, 2022 U.S. Dist. LEXIS 73202, at *24 (E.D. Mich. Apr. 21, 2022) (finding that, although the prosecutor's argument improperly shifted the burden of proof, the error did not require reversal because "the trial court correctly instructed the jury about the burden of proof and explained that attorneys' arguments are not evidence and told the jury that if an attorney said something contrary to the court's instructions the jury must follow the instructions").

### 9.    Directed Verdict Should Have Been Granted

In his ninth ground for relief, Goncalves argues that he was entitled to a directed verdict of acquittal due to the "unbelievability of the Commonwealth's witnesses." (*See* R. 1-7 at page ID 105-10). Goncalves argues that the witnesses' testimonies were inconsistent, specifically regarding various testimony related to the clothes worn by the robbers. (*See id.*). Goncalves supports his argument by alleging that the witnesses often failed to remember certain details about the robbery during their testimonies. (*See id.*).

In response, Respondent first argues that this claim is procedurally defaulted because the Kentucky Supreme Court concluded that it was not properly preserved for appellate review. (R. 18 at Page ID 355). Next, Respondent argues that the claim would nonetheless fail on the merits because "the credibility and weight to be given to witness testimony is left to the jury" and that a habeas court may not reweigh the evidence. (*Id.* at 355-56).

On direct appeal, the Kentucky Supreme Court found as follows:

Goncalves argues that his motion should have been granted because three of the Commonwealth's witnesses were inherently unreliable, and therefore their testimonies lacked credibility. This issue is unpreserved, and therefore we proceed with palpable error review. We will reverse a conviction for palpable error only when "manifest injustice has resulted from the error." RCr 10.26. This requires "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1 (Ky. 2006).

….

The trial court clearly did not err in denying Goncalves's motion. In ruling on a motion for a directed verdict, the trial court "must assume that evidence for the Commonwealth is true, but reserving to jury questions as to the credibility and weight to be given to such testimony." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). Any inconsistencies in the witnesses' statements go to the weight of those testimonies. *See Gray v. Commonwealth*, 203 S.W.3d 679 (Ky. 2006) (inconsistencies in the testimonies of Commonwealth's witnesses did not entitle defendant to a directed verdict when testimonies were properly introduced). Mattingly, Giguere, and Willoughby did not testify to events that were "physically impossible or improbable," as to render those testimonies devoid of any probative value. *Coney Island Co., Inc. v. Brown*, 162 S.W.2d 785 (Ky. 1942); *see also Potts v. Commonwealth*, 172 S.W.3d 345 (Ky. 2005). Rather, Goncalves identifies their respective motives in testifying as the source of their "inherent reliability." A

> witness's personal motive in testifying is a question of credibility within the sole province of the jury. *See Potts*, 172 S.W.3d at 349 (a witness's motive to fabricate testimony is an "ordinary matter of credibility, which is within the exclusive province of the jury.") (quoting Commonwealth v. Smith, 5 S.W.3d 126 (Ky. 1999)).

*Goncalves*, 404 S.W.3d at 205-06 (internal footnotes omitted). Regarding Goncalves's failure to preserve the issue for appellate review, the court noted that, "at the close of the Commonwealth's case in chief, Goncalves's standby-counsel moved for a directed verdict based on the Commonwealth's failure to establish each element of the first-degree robbery charge. This general motion for a directed verdict did not properly preserve the witness reliability issue for appellate review." *Id.* at 205 n.18 (citing *Pate v. Commonwealth*, 134 S.W.3d 593 (Ky. 2004); *Daniel v. Commonwealth*, 905 S.W.2d 76 (Ky. 1995)).

To start, Goncalves's claim is unpreserved and, thus, it is procedurally defaulted and non-cognizable on habeas review. *See Woolbright*, 791 F.3d at 631 ("When a petitioner has failed to fairly present his claims to the state courts and no state remedy remains, his claims are considered to be procedurally defaulted."). As previously discussed, when a petitioner has failed to comply with a state procedural rule, and the state enforces the procedural sanction for failure to comply foreclosing federal review, the claim will be considered defaulted and a court is not required to address the merits of the claim "unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice." *See Williams v. Anderson*, 460 F.3d 789, 805-06 (6th Cir. 2006); *see also Barton*, 786 F.3d at 464; *supra* Sec. II.A.

Goncalves failed to preserve his claim premised on the denial of the directed verdict based on the credibility and reliability of the Commonwealth's witnesses because the basis for his motion for directed verdict was that the Commonwealth did not prove the elements of robbery. *Goncalves*, 404 S.W.3d at 205 n.18. On appeal, the Kentucky Supreme Court recognized and enforced this

procedural default by reviewing the claim under palpable error review.[12]  *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) (noting that the Sixth Circuit treats "a state appellate court's review for plain error as the enforcement of a procedural default") (citing *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)).  Furthermore, Goncalves has not attempted to argue cause for the default or prejudice resulting therefrom, and instead only argues in reply to Respondent's assertion of procedural default that "[t]his is an unreasonable determination of facts/law" because Goncalves "moved for directed verdict *before* trial three…citing inherent [un]believability of the prosecution's case, specifically their witnesses."   (R. 23 at Page ID 858) (emphasis added). Goncalves seems to argue that he moved for directed verdict on the issue of witness credibility at either his first or second trial, however, that would not preserve the issue for his third trial or show cause for failing to preserve the issue at his third trial.  *See Miller v. Chandler*, No. 08-00066-GFVT, 2009 U.S. Dist. LEXIS 130853, at *25 (E.D. Ky. Feb. 20, 2009) (finding a claim related to directed verdict was procedurally defaulted where the Kentucky Supreme Court found defendant had failed to preserve the issue); *Gill v. Beckstrom*, No. 12-145-HRW-JGW, 2012 U.S. Dist. LEXIS 189755, at *10-11 (E.D. Ky. Oct. 16, 2012) (same).  As such, Goncalves's ninth claim is procedurally defaulted.

Even if Goncalves's claim was not procedurally defaulted, the claim would nonetheless fail on its merits.  *See Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (noting that federal courts may, but are not required to, "address a procedural-default issue before deciding against the petitioner on the merits").  In evaluating a sufficiency-of-the-evidence claim, this Court applies the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), considering "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could

---

[12] "'Plain error' is the federal analog to [the Commonwealth of Kentucky's] palpable error rule." *McCleery v. Commonwealth*, 410 S.W.3d 597, 605 (Ky. 2013).

have found the essential elements of the crime beyond a reasonable doubt." Accordingly, the emphasis here is not on the evidence favorable to Goncalves, but the evidence favorable to the prosecution. Additionally, the Court may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Moreover, "even were [this Court] to conclude that a rational trier of fact could *not* have found [Goncalves] guilty beyond a reasonable doubt, on habeas review, [it] must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis in original); *see also Root v. Skipper*, No. 20-1674, 2020 U.S. App. LEXIS 38270, at *7 (6th Cir. Dec. 8, 2020) ("Beyond the deferential *Jackson* standard, AEDPA also adds deference to the state appellate court's application of that sufficiency test.").

Thus, even if Goncalves's claim was not barred by procedural default, habeas relief is nonetheless unwarranted because he has failed to show that the Kentucky Supreme Court's adjudication of this issue was contrary to clearly established federal law, involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding. § 2254(d)(1)-(2). To start, after reviewing the evidence in the light most favorable to the prosecution, including the testimony of various witnesses and the ski masks and guns found at Goncalves's apartment to name a few, "*any* rational trier of fact could have found the essential elements of the [robbery] beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). Moreover, Goncalves only contests the credibility of the Commonwealth's witnesses, and as discussed above, a habeas court cannot "re-evaluate the credibility of witnesses." *Brown*, 567 F.3d at 205. Accordingly, the Kentucky Supreme Court's decision was not unreasonable.

### 10. Jury Instructions Failed to Define Petitioner's Specific Culpability

In his tenth claim, Goncalves argues that the jury instructions on complicity given at his third trial were erroneous because they did not accurately define his culpability. (*See* R. 1-7 at Page ID 112-16). Goncalves argues that the instructions provided to the jury did not define his conduct as a complicitor or principal and allowed the jury to convict him "if they believed Giguere **or** Jones **or** both committed the robbery." (*Id*. at Page ID 113) (emphasis in original). He also asserts that the trial court gave "confu[s]ing, ambiguous complicity instructions that also contained a misplaced modifier," which altered the nature and cause of the charges in the indictment. (*Id*. at 113-14) (internal quotation marks omitted). Goncalves also notes that different jury instructions were given at his first and second trials. (*Id*. at 114).

Respondent argues that the Kentucky Supreme Court adequately addressed this claim on appeal finding no error and that Goncalves has not raised a federal habeas argument but rather just complains about the outcome of his appeal. More specifically, on appeal, the Kentucky Supreme Court found:

> This Court has addressed the requirements of a jury instruction on complicity to first-degree robbery in *Crawley v. Commonwealth*, 107 S.W.3d 197 (Ky. 2003). In *Crawley*, the appellant complained that the instructions did not require the jury to find that he, as an accomplice, intended that the principal commit the robbery. *Id*. at 199. The Court found that the *Crawley* instructions were erroneous for failing to require that the appellant intend that the principal commit the robbery. As for the element of intent in first-degree robbery instructions, the Court noted in *Crawley* that the element of intent is "often" satisfied by giving a separate instruction defining complicity. *Id*. However, the *Crawley* opinion does not suggest that a separate instruction defining complicity is the *only* way to satisfy the intent element of a first-degree robbery instruction.
>
> Attacking the structure of the challenged complicity instruction, Goncalves claims that the instruction contained a "misplaced modifier" that allowed the jury to convict him without proof of his intent. This, according to Goncalves, allowed the jury to find him guilty simply if they believed that he was present at the scene of the robbery. We disagree. Despite Goncalves's claim to the contrary, a plain reading of the instruction reveals that the phrase "intending that Gerald Wayne Jones and/or Jennie Giguere do so" refers to Goncalves's intent, and not Jones and Giguere's intent. Goncalves's argument to the contrary renders the sentence almost nonsensical. Moreover, the defendant is clearly identified as the subject of the instructions, as is his act: "*he stole money and liquor* from the Boston Beverage

Depot or . . . Jones and/or . . . Giguere did so with *the defendant*, intending that . . . Jones and/or . . . Giguere do so . . ." Emphasis supplied. The word "intending" can only reasonably refer to the defendant's intent. *See Smith v. Commonwealth*, 370 S.W.3d 871 (Ky. 2012) (robbery and burglary instructions that failed to require the jury to find that the defendant had the specific intent that his accomplices would be armed with a deadly weapon were not erroneous). Because the instructions properly required the jury to convict with proof beyond a reasonable doubt of Goncalves's intent either as principal or complicitor, his rights to due process were not violated.

As for the trial court's refusal to tender a separate instruction defining complicity, we do not find reversible error. As stated in *Crawley*, a trial court's omission of the element of intent in a first-degree complicity to robbery instruction can be cured by a separate instruction defining complicity. 107 S.W.3d at 199. Here, the trial court declined to tender a separate instruction defining complicity. However, unlike the erroneous instructions in *Crawley*, the tendered robbery instruction itself properly included the element of intent. Therefore, unlike *Crawley*, the addition of a separate instruction defining complicity was unnecessary, and no error occurred.

*Goncalves*, 404 S.W.3d at 193-94 (internal footnotes omitted) (emphasis in original).

"Errors in jury instructions are generally not cognizable in federal habeas corpus unless they deprive a petitioner of a fundamentally fair trial." *Markwell v. Warden, Belmont Corr. Inst.*, No. 2:14-cv-86, 2015 U.S. Dist. LEXIS 86475, at *24 (S.D. Ohio July 2, 2015) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). A habeas petitioner who challenges the state trial court's jury instructions has a substantially high burden. *See Nichols v. Heidle*, 725 F.3d 516, 550 (6th Cir. 2013) (citing *Henderson*, 431 U.S. at 154). This high burden is highlighted by the Supreme Court in *Henderson*:

> The burden of demonstrating that an erroneous [jury] instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned.

*Henderson*, 431 U.S. at 154 (cleaned up). Thus, the question that the Court must presently consider is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id*.

To start, Goncalves does not assert a due process violation occurred due to the alleged erroneous jury instructions, instead his argument rests on the theory that his culpability in the complicity instruction was not defined and that the jury instructions were changed from those used in the first and second trials for the purpose of inducing the jury to return a guilty verdict.  (*See* R. 1-7 at Page ID 113-15).  Goncalves has failed to attack or even address the Kentucky Supreme Court's application of law.  Even if Goncalves had specifically asserted a due process violation claim, his claim would nonetheless fail.[13]  Because the jury instructions for the complicity charge included language requiring Goncalves to have had the intent to commit the crime, and because a separate instruction defining complicity is not required, Goncalves has failed to establish that the Kentucky Supreme Court's decision was contrary to or involved an unreasonable application of clearly established federal law, and he has also not shown that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See Harvey v. King*, No. 23-1980, 2024 U.S. App. LEXIS 10179, at *8-9 (6th Cir. Apr. 25, 2024) (finding the petitioner's claim that the trial court's jury instructions were erroneous was without merit because the state appellate court concluded that the intent element was included in the instructions).  Furthermore, he has failed to establish that the jury instruction "by itself so infected the entire trial that the resulting conviction violates due process."  *Henderson*, 431 U.S. at 154 (internal quotation marks omitted).  Thus, Goncalves is not entitled to relief on this claim.

---

[13] Goncalves cites to *Sandstrom v. Montana*, 442 U.S. 510 (1979), but does not directly discuss the case.  (*See* R. 1-7 at Page ID 112).  Regardless, *Sandstrom* is distinguishable from Goncalves's present argument and the underlying facts of his case.  To start, *Sandstrom* did not involve a collateral proceeding, but rather came from a direct appeal of Sandstrom's deliberate homicide conviction. *Sandstrom,* 442 U.S. at 514.  In *Sandstrom*, the trial court's instructions directed the jury that "[the] law presumes that a person intends the ordinary consequences of his voluntary acts."  *Id*. at 513 (internal quotation marks omitted).  The Supreme Court found that this instruction could have been interpreted by the jury as a conclusive statement on intent and not a rebuttable presumption, thus Sandstrom was deprived of his right to due process of law.  *Id*. at 526.  This impermissible burden shifting was not present in Goncalves's challenged jury instructions and *Sandstrom* does not address the issue at the center of Goncalves's claim, that intent or culpability was not properly defined for the jury.

### 11.    Ineffective Assistance of Counsel

Goncalves makes various claims of ineffective assistance of counsel.    To succeed on his ineffective-assistance-of-counsel grounds, Goncalves must prove both deficient performance and prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To prove deficient performance, he must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  He can meet this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances."  *Id.* at 688.  Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.*

To prove prejudice, Goncalves "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Id.* at 691.  When evaluating prejudice, courts generally must take into consideration "the totality of the evidence before the judge or jury."  *Id.* at 695.

Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry.  *Id.* at 697.  ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of

lack of sufficient prejudice . . . that course should be followed."). Finally, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because both *Strickland* and § 2254(d) are "highly deferential" and, when both the standards apply together, review is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations omitted).

Goncalves contends that (1) he was constructively denied counsel due to the Kentucky DPA's overload of cases and underfunding; (2) his trial counsel, Attorney Jamhal Woolridge, was ineffective for failing to investigate/interview alibi witnesses and for mishandling the issue of the alleged missing surveillance footage; (3) his trial counsel, Attorney Cristalle Maraman and Attorney Kristin Pollock, were ineffective for *inter alia*, not issuing subpoenas, for having conflicts of interests, and for not objecting to prosecutor's statements regarding the burden of proof; and (5) his appellate counsel, Attorney Susan Jackson-Balliet, was ineffective for having "divided loyalties" and for refusing to assert certain facts on appeal. (*See* R. 1-7 at Page ID 117-39). The Court considers each claim within this ground in turn.

### a.    Constructive Denial of Counsel

Goncalves first asserts that he was constructively denied counsel because the DPA "is grossly overloaded with cases and under funded [*sic*]" and because his appointed DPA counsel concealed various conflicts of interest from Goncalves. (R. 1-7 at Page ID 66, 69). Goncalves asserts that, because he was constructively denied counsel, there is a presumption of prejudice.

A presumption of prejudice standard is only applied in three circumstances. *Mitchell v. Mason*, 325 F.3d 732, 742 (6th Cir. 2003). The first is if there is a "complete denial of counsel, in which 'the accused is denied the presence of counsel at 'a critical stage.''" *Id*. (quoting *Bell v. Cone*, 535 U.S. 685, 695 (2002)). The second is if counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id*. (quoting *Bell*, 535 U.S. at 697) (internal

quotation marks omitted).  And the third is if "counsel is placed in circumstances in which competent counsel very likely could not render assistance." *Id.* (citing *Bell*, 535 U.S. at 697).  If a petitioner's claim meets one of these three requirements, prejudice is presumed and the claim is analyzed under the standard set forth in *United States v. Cronic*, 466 U.S. 648 (1984), rather than the *Strickland* standard.

Goncalves's claims regarding constructive denial of counsel do not fall into any of the three circumstances stated above.  To start, Goncalves was never completely denied counsel.  He was appointed DPA counsel and assigned new counsel after filing the appropriate motions to do so.  And when Goncalves decided to proceed pro se, he was also provided with hybrid counsel.  *See Goncalves*, 404 S.W.3d at 201.  Second, although Goncalves claims that all of his counsel had conflicts of interests, he does not assert that these alleged conflicts resulted in his counsel "fail[ing] to subject the prosecution's case to meaningful adversarial testing."  *Mitchell*, 325 F.3d at 742 (internal quotation marks omitted).  Finally, Goncalves's argument may be construed as an assertion that that his counsel could not render competent assistance given the circumstances (being overworked and underfunded).  However, Goncalves does not actually support his assertions with any specific examples of how his counsel was overworked or examples of how their workload effected their representation of him.  Even construed broadly, Goncalves's claims do not established a presumption of prejudice.  As such, Goncalves's claims will be analyzed under the *Strickland* standard.

Goncalves's claim that his appointed attorneys were ineffective because they were overworked and underfunded is insufficient to establish an ineffective assistance of counsel claim unless he can show by a preponderance of the evidence that his counsel's performance fell below an objective standard of reasonableness and that it actually prejudiced the outcome of his judgment.  As previously noted, Goncalves was represented by multiple different DPA counsel,

and he also represented himself *pro se* with the assistance of hybrid DPA counsel.  Goncalves appears to direct this broad claim that counsel was ineffective due to workload at all DPA counsel who represented him, but he does not state how his counsel's workload affected his trial or judgment specifically or how any counsel's performance fell below an objective standard of reasonableness.  By failing to adequately develop this issue, Goncalves has failed to state a ground for habeas relief.  *See Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012). ("Yet, merely conclusory allegations of ineffective assistance like those *Wogenstahl* makes here, are insufficient to state a constitutional claim.); *Olivo v. Lafler*, No. 5:06-10358, 2007 U.S. Dist. LEXIS 44032, at *22-23 (E.D. Mich. June 18, 2007) ("Petitioner's claim that his defense counsel was overworked, understaffed, and underfunded is insufficient to establish constitutionally ineffective assistance of counsel, unless he can show that counsel's performance fell below some objective standard of reasonableness and actually prejudiced defendant's chances at trial."); *Zaker v. McQuiggin*, No. 2:11-CV-10753, 2013 U.S. Dist. LEXIS 9987, at *15-16 (E.D. Mich. Jan. 25, 2013) (finding that petitioner's ineffective assistance of counsel claim failed because he "provide[d] no specific examples of ways in which counsel's  performance was hampered by his caseload").

Furthermore, the same lack of specificity is true regarding Goncalves's claims that all of his appointed counsel were ineffective because they had various conflicts of interest.  Goncalves broadly states that DPA counsel concealed "essential information about their personal interests that conflicted with Petitioner's to expose prosecutorial, police and judicial misconduct as well as ineffective assistance of counsel." (R. 1-7 at Page ID 69).  Yet, in Goncalves's claim of constructive denial of counsel, he never specifically states what these conflicts actually were. (*See* R. 1-7 at Page ID 65-70).  In later claims, he does assert that certain counsel had conflicts of interest because they possessed "divided loyalties" to co-defendants (*see id.* at Page ID 82, 126), other clients (*see id.* at Page ID 132), other attorneys (*see id*. at Page ID 126), or even their own spouses

(*see id.*).  Yet, he does not provide any facts to support these allegations, nor does he argue how these alleged conflicts prejudiced the outcome of his judgment.  As such, Goncalves's conclusory allegations of ineffective assistance of counsel based on conflicts of interest also fail.  *See Wogenstahl*, 668 F.3d at 335.

### b.    Trial Counsel Woolridge

Goncalves next argues that his first DPA appointed counsel, Attorney Woolridge, was ineffective because he did not properly investigate and interview alibi witnesses and because he did not properly address the alleged video surveillance destruction/preservation issue.

Counsel may be found constitutionally ineffective for failing to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *see also Howard v. United States*, 743 F.3d 459, 468 (6th Cir. 2014). It is presumed that an attorney's decision not to call a particular witness was based upon a sound trial strategy, absent evidence in the record to the contrary.  *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).  Counsel's performance is given "great deference" and "a presumption of reasonableness," such that when choosing to call a witness, "[f]or counsel's [decision] to rise to the level of constitutional ineffectiveness, the decision . . . must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy." *Moore v. Mitchell*, 708 F.3d 760, 786 (6th Cir. 2013) (citing *Strickland*, 446 U.S. at 689; *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997)).

Goncalves has not met his burden of demonstrating by a preponderance of the evidence that trial counsel failed to conduct a reasonable investigation.  Although he asserts that his counsel failed to contact alibi witnesses, (*see* R. 1-7 at Page ID 121), he has not provided sufficient factual support to back these claims.  Goncalves has not named the individuals whom he believes his counsel should have contacted, but states that counsel "was too busy to find neighbors or evidence

to verify [Petitioner's] location in Leitchfield at the time of the robbery[.]" (*Id.*). As stated above, conclusory allegations do not warrant relief. *See, e.g., Wogenstahl*, 668 F.3d at 335. Moreover, "[w]hen a defendant claims that his attorney failed to call a witness at trial, he must '[a]t the very least . . . submit sworn affidavits from each of the individuals he has identified as uncalled witnesses stating whether they were in fact available to appear at trial and able to give testimony favorable to [the] defense.'" *United States v. Tilghman*, No. 5:07-CR-138-KSF-HAI; No. 5:10-CV-7143-KSF-HAI, 2013 U.S. Dist. LEXIS 126194, at *15 (E.D. Ky. Jan. 14, 2013) (quoting *Talley v. United States*, No. 1:00-cv-74, 2006 U.S. Dist. LEXIS 86401, 2006 WL 3422997, at *28 (E.D. Tenn. Nov. 27, 2006)).

Additionally, as the Kentucky Court of Appeals pointed out in its opinion affirming the trial court's denial of Goncalves's RCr 11.42 motion, Woolridge only represented Goncalves prior to his first mistrial, and thus he would not be responsible for failing to call witnesses at Goncalves's third trial, which resulted in conviction. The appellate court noted, "Goncalves is not entitled to make an ineffective assistance of counsel claim against an attorney who never represented him at trial and whose pretrial work was prior to this mistrial." *Goncalves*, 2018 Ky. App. Unpub. LEXIS, at *7. The appellate court also noted that Woolridge was the "first of four" attorneys involved in the case and was involved "well before the first trial took place and no longer represented Goncalves when the third trial took place." *Id*. Due to Woolridge's early involvement in Goncalves's case, it is unclear how his actions resulted in prejudice, and Goncalves has not argued what prejudice resulted from Woolridge's actions specifically. Further, Goncalves does not make any similar claims of failure to interview possible alibi witnesses against any of this other three trial counsel, which suggests that at some point prior to his third trial the alibi defense was investigated. Thus, not only does Goncalves's claim lack specificity regarding how counsel's

actions were objectively unreasonable, but he has also failed to show how he was prejudiced by counsel's actions.

Regarding Goncalves's claim related to the mishandling of the alleged missing surveillance footage, Goncalves has once again failed to develop his claim by asserting what exactly Woodridge did that fell below an objective standard of reasonableness.  Moreover, on direct appeal, the Kentucky Supreme Court established that beyond Goncalves's speculations, there was no proof of any missing surveillance evidence, and furthermore, even if there were parts of the video missing, any prejudice was cured by the missing evidence instruction given to the jury.  *Goncalves*, 404 S.W.3d at 195-97.  Based on these findings, Goncalves has failed to show how he was prejudiced by Woolridge's alleged failures in addressing the "missing" surveillance footage.

### c.    Trial Counsel Maraman and Pollock

Goncalves next lodges various complaints about his trial counsel Maraman and Pollock. Regarding Maraman, Goncalves states that: (1) her representation was unethical and unconstitutional because she was overloaded with work; (2) she had "d[i]vided loyalties to Woolridge;" (3) she refused to prepare and serve subpoenas; (4) she refused to obtain private detective funds; (5) she did not inform Goncalves of her intent to withdraw from the case; and (6) Maraman's withdrawal from the case caused delay.  (R. 1-7 at Page ID 126).  This list of grievances is the only information that Goncalves has provided regarding his ineffective assistance of counsel claims against Maraman.  He does not state how these various items fell below an objective standard of reasonableness, nor does he argue how these items prejudiced the outcome of his trial.[14]  As such, his claims against Maraman fail.

---

[14] It is also worth noting that, in its order denying Goncalves's RCr 11.42 motion, the trial court stated that Maraman acted as hybrid counsel for Goncalves for "less than two weeks" and that, during that time, Maraman "moved for funds for an investigator and an order granting was entered."  (R. 18-12 at Page ID 742).

Goncalves also lists similar issues regarding Pollock, repeating his claims that counsel was overworked and had "divided loyalties." (*See* R. 1-7 at Page ID 127). The single claim that Goncalves addresses in any amount of detail here is his claim that Pollock did not object to the prosecution's statements that "shifted the burden of proof" to Goncalves. (*See id*. at Page ID 127-28). However, as discussed above, it was Goncalves's hybrid counsel at trial who *did* object to the prosecutor's statements. *See supra* Sec. II.C.8.

"During the Commonwealth's closing argument, the prosecutor began to argue: 'To believe this defendant not guilty, you must disbelieve . . .' Goncalves's standby-counsel objected immediately, arguing that the prosecutor's statements were improper." *Goncalves*, 404 S.W.3d at 194. Pollock's decision to object to this statement was reasonable, and the prosecutor was directed to rephrase. *See id*. Goncalves seems to suggest that Pollock should have objected to other portions of the prosecutor's closing statements arguing that other statements also shifted the burden, but again, he does not specifically state to what Pollock should have objected and does not state how this prejudiced the outcome of his trial. (*See* R. 1-7 at Page ID 128). Additionally, on direct appeal, the Kentucky Supreme Court reviewed the prosecutor's closing argument "as a whole" and found that the argument did not improperly shift the burden of proof. *Goncalves*, 404 S.W.3d at 194-95. Thus, the record supports a finding that it was not unreasonable for Pollock to not object further to the prosecutor's closing argument.

### d.    Appellate Counsel Jackson-Balliet

Finally, Goncalves argues that his appointed counsel on appeal was also ineffective. Goncalves repeats his arguments that Jackson-Balliet was overworked and had divided loyalties, for which he again provides no support and no argument regarding how these alleged issues prejudiced the outcome of his appeal. (*See* R. 1-7 at Page ID 132). Goncalves also asserts that

Jackson-Balliet "refused to place certain crucial facts in her brief." (*Id*. at Page ID 133). In its decision addressing the denial of Goncalves's RCr 11.42 motion, the appellate court noted:

> [T]he mere fact that the Kentucky Supreme Court affirmed Goncalves' conviction does not render counsel's performance ineffective. We agree with the trial court's assessment and review of the record that Goncalves has produced no evidence, other than his personal impression, that his appellate counsel was deficient. Nor did he demonstrate any prejudice to him resulting from the representation. Hence, Goncalves has not proven that appellate counsel's performance was ineffective.

*Goncalves*, 2018 Ky. App. Unpub. LEXIS 510, at *12. In the present Petition, Goncalves lists twenty-one "facts" that he asserts his appellate counsel failed to include in the appellate brief, including *inter alia*: "VanDyke admitted to editing video foo[t]age"; the trial court limited Gonaclves's ability to impeach Mattingly; "Jones did robbery [with] his roommates"; "Pro se defendant [did] object to the re-frazing [sic] of burden shift"; and "that trials 1 & 2 are part of the 'record on appeal.'" (R. 1-7 at Page ID 133-34).

To start, Goncalves's bare allegation that his appellate counsel was ineffective for not asserting certain facts on appeal does not meet his burden of establishing that his counsel's actions fell below an objectively reasonable standard, nor does his allegation establish that he was prejudiced by his counsel's appellate brief. Moreover, many of the facts that Goncalves states his counsel did not assert on appeal relate to broader issues that were argued and addressed on appeal. For example, his appellate counsel did argue that the prosecutor improperly shifted the burden of proof during closing arguments, she did assert claims related to Goncalves's first and second trials, and she did argue that Goncalves was denied his right to confront and impeach witnesses. *See Goncalves*, 404 S.W.3d at 180.

Jackson-Balliet also argued that the Commonwealth failed to preserve the video surveillance footage and that this prejudiced Goncalves. *See id.* at 196-97. Although counsel may not have specifically argued that "VanDyke admitted to editing video foo[t]age" as Goncalves wished, counsel is unable to make arguments that are not supported by the record. Counsel's duty

of loyalty to her client "is limited to legitimate, lawful conduct compatible with the very nature of a trial as a search for truth," and, "[a]lthough counsel must take all reasonable lawful means to attain the objectives of the client, counsel is precluded from taking steps or in any way assisting the client in presenting false evidence or otherwise violating the law." *Nix v. Whiteside*, 475 U.S. 157, 166 (1986).

On appeal, the Kentucky Supreme Court noted that "[Van Dyke] further testified that he did not intentionally edit the footage, nor was he directed to do so by the Commonwealth or by Detective Mattingly." *See Goncalves*, 404 S.W.3d at 196. Thus, had appellate counsel argued that Van Dyke "admitted to editing video footage" as Goncalves argues she should have, counsel would have presented false evidence, which she is not permitted to do. *See Scott v. Dugger*, 891 F.2d 800, 804 (11th Cir. 1989) ("[A]ppellant's lawyer could not have rendered ineffective assistance by failing or refusing to present a false defense."); *Lott v. MacLaren*, 569 F. App'x 392, 399 (6th Cir. 2014) ("An attorney's refusal to violate codes of professional ethics cannot constitute ineffective assistance of counsel."). Many of Goncalves's "facts" that he states appellate counsel should have asserted similarly misrepresent the trial record, and thus could not have legitimately been raised by counsel on appeal. Because Goncalves has failed to support his claims for ineffective assistance of counsel as to Jackson-Balliet and because Jackson-Balliet's actions were objectively reasonable, this claim also fails.

## III.    CERTIFICATE OF APPEALABILITY

Goncalves is not entitled to a certificate of appealability (COA). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases in the United States District Courts, the District Court must issue or deny a COA when it enters a final order adverse to the applicant. A COA may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court explained the requirement associated with a "substantial

showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Goncalves's § 2254 Petition or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it will be recommended that a COA be denied upon the Court's entry of a final order in this case.

## IV.    CONCLUSION AND RECOMMENDATION

For the reasons stated herein, **IT IS RECOMMENDED** that:

1.    Goncalves's § 2254 Petition (R. 1) **be denied** and this matter **be dismissed;**

2.    a COA **be denied** by the Court in conjunction with the entry of its final order in this matter;

3.    judgment in favor of the Respondent **be entered** contemporaneously with the Court's entry of its final order; and

4.    this case **be stricken** from the active docket of this Court.

The parties are directed to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (b) of the statute. *See also* Rules Governing Section 2254 Cases in the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party

may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and the Sixth Circuit Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Signed this 30th day of September, 2024.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

G:\Judge-CJS\DATA\habeas petitions\2254 General\21-44-GFVT Goncalves R&R final.docx